CASE 80—EQUITY—APRIL 1.

# Southworth v. Casey, &c.

APPEAL FROM OWEN CIRCUIT COURT.

1. Under the statute of 1856 all property sold *bona fide* between the time of the act done in contemplation of insolvency and the institution. of the suit provided for by the statute, is excluded from the operation of the act.

2. Where a debtor sells his property in contemplation of insolvency, and: a creditor becomes the *bona fide* purchaser, he is entitled to stand as a preferred creditor to the extent of his actual payment therefor beyond' his demand against the debtor.

LILLARD & HALLAM AND BARRET & BROWN FOR APPELLANT.

1. The proof shows that Suter's transfer of his property was not in contemplation of insolvency, but to enable him to pay his debts.

2. Inasmuch as appellant's purchase of and payment for the property was. in good faith, to the extent of his payment over and above his debt against Suter, he should have been adjudged to be a preferred cred-· itor. (Terrell v. Jennings, 1 Met., 458; Temple v. Poyntz, 2 'Duv.,. 279; Davis v. Gardner, 1 Bush, 272; Thompson v. Heffner, 11 Bush, 362.)

STROTHER & ORR AND H. P. MONTGOMERY FOR APPELLEES.

1. Suter is the son-in-law of appellant. The proof shows without doubt· that Suter sold the goods to appellant-in contemplation of insolvency.

2. All the surroundings lead to the conclusion that the judgment should. be affirmed.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

That Suter knew he was insolvent when he sold the· stock of goods at Gratz to Southworth cannot be doubted. In receiving his own note in part payment for the goods he must have known he was preferring Southworth to that extent, and he must be taken to have designed that which. he knew must result from his voluntary act.

But it by no means follows that all the property he then owned can now be reached by his creditors in this proceeding under the statute.

The fifty acres of land subsequently conveyed to South-worth was not sold in payment of any debt due by Suter to Southworth.   The sale was *bona fide*, and the price, as far as it was due to Suter, was paid in money.   There is no evidence that the sale was made to prefer Southworth as a creditor.   On the contrary, the evidence is conclusive that the sale was not made with any such design.   At the time it was made Suter owed Southworth several thousand dollars, not one cent of which was paid out of the purchase money. The whole amount, except what was due to Suter's vendor, was paid to him in cash, thus showing the utmost good faith on Southworth's part.

It is true the first section of the statute declares that a sale within its provisions shall operate as an assignment and transfer of all the property and effects of such debtor, and shall inure to the benefit of all his creditors; but this language must be construed in connection with other provisions of the statute, and in view of the evident design of the legislature in its enactment.

Notwithstanding the broad and emphatic language of the first section, the second section provides that a suit to enforce the rights of creditors must be brought within six months, and if not so brought, all benefit under the statute is lost; and the fourth section provides, that when it is decided that a sale, mortgage, or assignment was made in contemplation of insolvency, and with the design to prefer one or more creditors to the exclusion of others, "the court shall compel the debtor to surrender to such receiver all property and effects *in his possession or under his control,*" &c. . . . . And the court shall also compel every person who shall acquire, by purchase, assignment, or otherwise, any property or effects from such debtor, *after* the suit

contemplated by this act *shall be instituted*, to surrender the same to such receiver.

This language was clearly intended to exclude from the operation of the act all property or effects *bona fide* sold or assigned between the time of making the sale, mortgage, or assignment adjudged to be within the act, and the time when the suit contemplated by the act is commenced.

But although we hold that Suter must have known that he was insolvent, and therefore must be taken to have designed to prefer Southworth to the extent of the $290 note received in part payment for the goods, yet the evidence fails to show that Southworth sought to be preferred, or that he knew Suter was contemplating insolvency, and consequently Southworth was not guilty of any intentional wrong to the other creditors of Suter.  He is therefore to be taken to have been so far a *bona fide* purchaser of the goods, that he will be entitled to stand as a preferred creditor to the extent of his actual payment to Suter for them over and above the note for $290.   (Whitaker v. Garnett, 3 Bush, 411.)

That Suter used the money and the negotiable notes received for the goods to take up paper on which Southworth was his surety, is not set up as an act of insolvency, and does not affect the questions involved in this case.  It is neither alleged nor proved that there was any agreement or understanding between them that the proceeds of the sale should be so used, nor that Southworth even knew or had an intimation that they were to be so used.  He paid the money and notes to Suter in good faith, and they became his absolute property, and Southworth cannot be held responsible for the use made of them subsequently, without any knowledge or connivance on his part.

Wherefore, the judgment is reversed, and the cause is remanded for further proceedings in conformity to this opinion.