CASE 55—PETITION EQUITY—JUNE 16.

| 87 | 357 |
|----|-----|
| 97 | 299 |

# Vinson, Goble & Prichard v. McAlpin & Co.

### APPEAL FROM BOYD CIRCUIT COURT.

1. **ASSIGNMENTS BY OPERATION OF LAW—SALES OF PERSONAL PROPERTY.**—J entered into a written contract with appellants, reciting that he had sold to them five hundred trees that he had purchased of certain persons, naming them, the price per foot and the time and place of delivery being fixed in the contract. On the same day a verbal contract was made for the sale of other timber, and subsequently another contract was made for still other timber. Under these contracts appellants were to make advances to enable J to pay for this timber, which they did, and the timber was delivered prior to the time fixed in the contracts for its delivery. J being insolvent, the transaction is attacked as being within the act of 1856. *Held*—That the relation of vendor and vendee, and not the relation of debtor and creditor, was created by the contract, and the delivery of the timber in compliance with the contract was not a preference within the statute. The fact that the contract was not enforceable by reason of the fact that the timber was not identified is immaterial, as the contract was completed by the delivery of the timber. Nor is it material that it was delivered at a different place from that fixed in the contract, or that a different measurement from that originally agreed on was adopted.

2. **SAME.**—To the extent that timber was delivered in payment of an old debt, there was a preference within the meaning of the statute, and to that extent appellants must account for the timber delivered, but for nothing more.

K. F. PRICHARD AND W. C. IRELAND FOR APPELLANTS.

1. Appellants were not *creditors* of M. H. Johns in the sense in which that term is used in the statute. (Napper v. Yager, 79 Ky., 243.)

2. The delivery of the timber by Johns in February and March, 1884, was *not a sale and* delivery of the timber at these dates, but simply a *delivery* pursuant to and in compliance with a contract long before made, and is not within the operation of the statute. (Brooks, Waterfield & Co. v. Staton's Adm'r, 79 Ky., 175.)

WM. LINDSAY FOR APPELLEES.

1. The contract of August, 1883, was not enforceable because it applied to no specific trees or timber. (Moss v. Meshew, 8 Bush, 189; Ferguson, Assignee, v. Northern Bank of Ky., 14 Bush, 566.) Therefore the delivery of the timber can not be protected upon the ground that it was under the contract.
2. As the contract did not provide for advances, it can not be claimed that the advances were made under the contract, or upon the condition that the property should be delivered. Therefore, the case of Brooks, Waterfield & Co. v. Staton's Adm'r, 79 Ky., 174, does not apply.
3. None of the timber received was taken and accounted for at the prices and measurements provided for in the written contract. Therefore, the contract does not take the delivery of the timber out of the statute.
4. In any event, so far as the timber was applied to the payment of a debt which antedated the contract, it was a fraudulent preference.

MOORE & BROWN ON SAME SIDE.

1. As the contract upon which appellants rely did not provide for advancements, appellants were general creditors, with no right to any advantage over other creditors.
2. The contract passed no right or title to the timber because it was for the sale of standing trees, and, therefore, within the statute of frauds.
3. The sale was not complete, and, therefore, the title did not pass. (Dye v. Bramel, 4 Ky. Law Rep., 669; Wells v. Malley, 5 Ky. Law Rep., 862.)
4. The contract relied on is too indefinite and uncertain to confer any rights.
5. Much of the timber delivered was not delivered under any antecedent contract, and as to this timber appellants certainly had no contract rights.

ALEX. LACKEY OF COUNSEL ON SAME SIDE.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

M. H. Johns, on the twenty-first of March, in the year 1884, made an assignment for the benefit of his

creditors. In April, 1884, George W. McAlpin & Co. and other creditors instituted this action to have certain transactions between Johns, the debtor, and the appellants, Vinson, Goble & Prichard, declared fraudulent, as being made in contemplation of insolvency, and with the design to prefer them as creditors. The appellants had for many years been engaged in conducting the business of purchasing what is known as round lumber, in the town of Catlettsburg, Kentucky.

Johns, the debtor, was engaged in buying and selling timber in the same part of the State, and for years prior to the transactions adjudged to be within the act of 1856, had sold and contracted to sell to these appellants large quantities of timber, the appellants advancing him the money to purchase the timber, fell it in the forests, and prepare it so as it could be rafted to the appellants at their place of business, or at points where they desired it to be delivered.

In August and September, in the year 1883, there was a written and also verbal contracts made between Johns and these appellants for timber. On the eighth of August, 1883, they made a written contract with Johns as follows: "I have sold to Vinson, Goble & Prichard five hundred trees that I purchased of Blankenship, Wm. Conly, Clay Farly and others, on Little Rockcastle, a tributary of Wolf creek, in Martin county, at two cents per lineal foot, and agree to deliver it at Catlettsburg by June 17, 1884, for fifteen cents for twenty-inch timber at the top, forty feet long, and one cent off or on. No raft to be less than seventeen inches in diameter.

"M. H. JOHNS."

On the same day a verbal contract was made for an inferior article of timber, and in September, 1883, a verbal contract was made for the purchase of certain oak timber.

Under these contracts Johns, in February and March, 1884, delivered timber of the value of near seven thousand dollars to these appellants, the money for which had been paid to Johns by the appellants in advance, to enable him (Johns) to pay for the timber, paying his hands, furnishing them. provisions, and to enable him to comply with his contract. It is alleged and not denied that these appellants were, under the agreement with Johns, to make him these advances, and that such was the agreement, regardless of the aver-ment in the pleadings, is clearly inferable from the proofs. The contracts are clearly established, and the money actually advanced is made manifest by the proof, and the sole question is, Johns being insolvent when the contract was made and the moneys advanced, did the delivery of this timber in payment of the advances made bring the transactions within the act of 1856? The chancellor so held, and of this the appellants complain. It seems that, at the date of the contracts, the timber sold was in trees then not. severed from the ground, with no marks or other identification so as the title passed to the purchaser.

The contracts were purely executory, the appellants to make advances to enable Johns to cut the timber and deliver it in compliance with his under-taking. The timber, however, was cut and delivered to these appellants, and it is therefore immaterial whether the title passed at the time of the sale or not. It was.

perfected by the delivery, and made that valid which could not have been enforced. The money was advanced on the faith of this executory contract, and in pursuance of an agreement to advance, and it is certain that it was advanced and used for the purpose of preparing this timber for the market. It was not merely a loan of the money, but an advance of the funds to be paid for in this identical timber. It was a purchase of the timber that was made complete by its delivery, and the fact that it was delivered at a different place, or a different measurement adopted, than that provided by the contract, can make no difference. Such facts would only be evidence to show that no such contract as that alleged was ever made, but that it was made there can be no doubt. The relation of creditor and debtor did not exist between these parties, .and prior to June, 1884, when this timber purchased was to be delivered, it was in fact delivered. There never was any refusal on the part of Johns to perform his part of the contract; but, on the contrary, he delivered to his vendees the timber they purchased from him; but because the contract was not enforceable we are asked to determine that no purchase was made, and the relation of debtor and creditor only existed. This would not be just or equitable, and we might add, would prevent the parties from complying with a contract they were not only willing to comply with, but had in fact executed. It is questionable whether these appellants prior to June, 1884, when this timber was to have been delivered, although they had advanced large sums of money on their contracts, could have demanded payment in any thing else but

in the timber they had purchased, or if they could have sued at once for the money, being vendees, and having received the timber, no such relation as debtor and creditor ever existed. They were no such creditors of Johns, in any aspect of the case, as brought them within the act of 1856, and no preference was designed or contemplated when the timber was delivered.

In Napper v. Yager, reported in 79 Ky., 241, creditors sought to set aside a deed executed by one of the parties, as was alleged, in contemplation of insolvency, etc. Napper had executed a deed to Ludwick under a parol agreement, by which Ludwick had advanced to Napper several hundred dollars for which he was to convey the land. It was held that the transaction did not create the relation of debtor and creditor, and that Ludwick could not be regarded as a creditor until the parol contract had been repudiated by Napper. In the present case the facts refute the idea of any intention to prefer, and the fact that an account was exhibited by the appellants showing the state of accounts between them, with credits and debits, does not affect the question involved. The appellants had to keep an account of moneys advanced, and because kept in the usual way, did not create the relation of creditor and debtor, and destroy the relation of vendor and vendee that existed by virtue of the contracts between the parties. It is attempted to be shown by A. H. Goble that one of the appellants denied having purchased any timber from Johns, and while this may be so, it is plain that it was purchased, and much of it had been delivered before the alleged conversation

(that is denied) took place. We perceive no reason for disturbing these contracts, or requiring appellants to account for the value of the timber purchased under them.

There is a question remaining, however, that brings a branch of the case within the insolvent act. Some four hundred and eight dollars of the claim paid on this timber was the balance due on an old account, or for advances made on other timber. It was a plain indebtedness, and the promise to pay it in timber or money, under the circumstance, with an actual payment made in 1884, was a preference, and must be so construed. The payment in timber was the preference, and this the appellants must account for, but nothing more, as the timber purchased, and upon which the advances were made, can not be construed as a preference within the meaning of the statute.

Judgment reversed, and remanded for proceedings consistent with this opinion.

———

To a petition for rehearing, Judge PRYOR delivered the following response of the court:

When the opinion in this case was delivered the case of Fuqua v. Ferrell, reported in 80 Ky., 69, was not considered, and we now fail to see any analogy between these two cases. There a mortgage was executed to secure the debt by an insolvent debtor, and operating as an assignment, the estate then passed to creditors, and any subsequent transfer by the debtor could not divest the creditors of title unless made to a *bona fide* purchaser. In Southworth v. Casey, reported in 78

Ky., 395, it was so expressly held, and the *bona fide* purchaser who obtained the property between the time of the act operating as a transfer of the debtor's property and the institution of the suit by creditors, was protected in his title. In Fuqua v. Ferrell this court was discussing the effect of the payment by the debtor of a part of the mortgage debt after the execution of the mortgage. The payment was also an act of insolvency, and in alluding to such payments, or the acquisition of property after an act of insolvency, the rights of an innocent purchaser, as was said in that case, would be protected, unless the purchase was made after the institution of the suit by creditors. There is no conflict in the cases. Both follow the statute. In the case before us the parties who are the appellants here were *bona fide* purchasers from the time the contracts were made until the timber was delivered, and when executed by the delivery, there is no reason in law or equity, or any provision of the statute, that would compel the appellants to surrender their acquisitions for the benefit of the common creditors.

Petition overruled.