CASE 23—EQUITY—FEBRUARY 23, 1882.

# McKee, &c., v. Scobee, &c.

### APPEAL FROM SHELBY CIRCUIT COURT.

1. The conveyance of the land by appellant to his brother, Joshua Mc-Kee, to pay a preëxisting debt, was in contemplation of insolvency, and with the design to prefer him as a creditor.
2. A surety being "a person interested" may, under the statute, maintain his action against his principal who seeks to prefer another creditor than the person to whom the surety is bound.
3. And the assignee of the surety who assigns to him all of his property for the payment of his debts is properly joined as plaintiff.

BULLOCK & BECKHAM FOR APPELLANTS.

1. The circuit court should have dismissed the petition.
2. Appellee Scobee was only surety for appellant McKee. He had neither paid the debt upon which he was surety nor any part of it.
3. Appellee Whitesides, the assignee of McKee, has no right of action. (Bank of America v. Second Nat. Bank of Louisville, MS. Opin., 1876 or 1877; Adams v. Buckner, MS. Opin., Feb., 1880.)
4. The result of the judgment is actually to produce inequality between appellants' creditors.

CALDWELL & HARWOOD FOR APPELLEES.

1. Any person interested may maintain his action against a debtor seeking to prefer creditors in contemplation of insolvency. (Gen. Stat., 490.)
2. The proof sustains fully the allegation of the petition. (Applegate v. Murrell, 4 Met., 23; Story v. Graham, *Ib.*, 320; Thompson v. Heffner, 11 Bush, 353.)

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

On the 29th of January, 1879, Levi McKee sold and conveyed to his brother, Joshua McKee, 25 acres of land for the consideration of $1,500, in payment of a preëxisting debt for that amount.

On the 28th of February, 1879, he made an assignment for the benefit of his creditors, conveying all his property not exempt from execution to Virgil Lewis, his assignee.

At the same time Joshua McKee re-conveyed the 25 acres to the assignee for the payment of the creditors generally of Levi, he consenting thereto.

It appears that in 1872 Levi McKee became the guardian of E. T. and Fannie Farmer, and executed a guardian bond, with appellee, Saml. Scobee, as his surety, and at the date of the sale of the land was indebted to his wards about $3,400.

This action was brought within six months from the 29th of January, 1879, by Scobee and appellee, P. S. Whitesides, to whom Scobee had previously conveyed all his property for the benefit of his creditors.

In their petition they allege that besides the 25 acres Levi McKee had, previous to the assignment by him to Lewis, sold a considerable amount of personal property, and applied the proceeds to the payment of preëxisting debts, and that all of said sales and payments were made by him in contemplation of insolvency, and with the design of preferring the creditors to whom the payments were made to the exclusion in whole or in part of his other creditors.

Philip Bird, who had, about the 28th of February, 1879, been appointed guardian of the two infants in the place of Levi McKee, was made a party defendant to the action.

Upon the trial of the action it was adjudged by the court below that the sale of the twenty-five acres of land was an act done in contemplation of insolvency, and with a design to prefer Joshua McKee to the exclusion in part of the other creditors of Levi, and that the deed operated as an assignment of all his property for the benefit of all his creditors.

From that judgment Levi and Joshua McKee, Virgil Lewis, assignee of Levi McKee, and Fannie Basket, a creditor, have appealed.

Appellants assign as errors—

*First.* The judgment of the court overruling the demurrer to the petition.

*Second.* The judgment of the court that the sale on the 29th of January was made in contemplation of insolvency, and with the design to prefer Joshua McKee to the exclusion in part of the other creditors of Levi McKee.

The ground of demurrer is, that the petition does not state facts sufficient to constitute a cause of action.

Counsel for appellants contend that the demurrer ought to have been sustained, because, although Scobee was the surety of Levi McKee, he was not a creditor in the meaning of article 2, chapter 44, General Statutes, and could not maintain the action without alleging he had paid the debt for which he was liable as such surety; and that Whitesides, his assignee, has no right to maintain the action, because Scobee, not being himself a creditor, could not, by his deed of assignment, make a creditor of his assignee.

It is clear that if Scobee, previous to his assignment, could have maintained the action, his assignee can now do so.

By section 1 of the article referred to it is provided that "every sale, mortgage, or assignment made by debtors . . . in contemplation of insolvency, and with the design to prefer one or more creditors to the exclusion in whole or in part of others, shall operate as an assignment and transfer of all the property and effects of such debtor, and shall enure to the benefit of *all* his creditors in proportion to the amount of their respective demands, *including those which are future and contingent.*"

So far from sureties being excluded from the benefit and protection of the law, it is clear that it was intended they

should be included even when they have not paid off the debts for which they may be bound. No other interpretation can properly be given to the language used. Besides, by section 2, same article, it is expressly provided that any person *interested* may file his petition to subject to the control of a court of equity all such transfers as are in section 1 declared to enure to the benefit of creditors generally.

We are unable to conceive a state of case in which the surety of the failing debtor would not be "a person interested" in the meaning of the statute; for, whether the assignment and transfer of the property and effects of the principal is by operation of law or by his own act, the probable result is to impose the burden of discharging the debt wholly or partially upon the surety, and thus make what was before contingent a certain and fixed liability against him.

We are therefore of the opinion that the action was properly brought.

2. The principal difficulty in this case is to determine what effect, if any, should be given to the attempted conveyance of the twenty-five acres of land by Joshua McKee to the assignee, Whitesides.

Both the contemplated insolvency and sale to or for the benefit of one creditor to the exclusion of others must concur before the trust for creditors can result from the operation of the statute. (2 Duvall, 277.) But if the facts are such as to show that, at the time of making the sale, Levi McKee knew he was insolvent, it will be within the statute. (4 Met., 23.)

It now appears that, at the date of the sale to his brother, Levi McKee was unable to pay all his debts, and the necessary result of that sale was, therefore, to give Joshua Mc-

Kee a preference to the exclusion, in whole or in part, of his other creditors. Whether he knew at the time of the sale he was insolvent must be determined by the facts and circumstances as they are presented.

About one month after the sale to his brother the deed of assignment to Whitesides was made, which amounts to an admission of his insolvency at that time. He appears to be a man of intelligence, and was engaged extensively in the business of farming; but there is nothing to show that his business affairs were so complicated or diversified as to make it difficult for him to readily ascertain, before making the sale, whether he was solvent or insolvent.

Although there is nothing in the record to show that he lacks integrity, still, under the circumstances of this case, the only rational conclusion that can be reached is, that he must have known he was insolvent; and if he did know, he must, according to a plain rule of law, be taken to have designed what was the necessary result of that sale, viz: preference of his brother to the exclusion, in whole or in part, of his other creditors.

As to the effect of the conveyance by Joshua McKee to Whitesides, which was doubtless made in good faith, and with the intention to place all the creditors of Levi upon an equal footing, there is some difficulty, arising from the fact suggested by counsel that, to set aside that conveyance would result in giving preference to the wards of Levi, and thus prevent an equal distribution of the assets amongst all the creditors.

But the statute being plain, direct, and without any qualification, must be enforced as it is written.

As soon as the act of insolvency was committed, all the property and effects of Levi McKee were, by operation of

law, assigned and transferred for the benefit of all his credit-ors, and became subject to the control of a court of equity upon the petition of any person interested. And as neither the law or public policy authorizes or requires the status thus fixed by the parties themselves to be disturbed, the deed from Joshua to Whitesides must be held ineffectual to pass any title.

The judgment of the court below must be affirmed.