CASE 107—ACTION TO SET ASIDE FRAUDULENT PREFERENCE
NOVEMBER 30.

# Allen's Sons v. Dillingham's Assignee, Etc.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. FRAUDULENT  PREFERENCES—EVIDENCE.—A  conveyance  by  a
    debtor of his residence to a trustee in secret trust for the ben-
    efit of a creditor with full knowledge of his failing circum-
    stances and with intent to favor the creditor thus made a
    beneficiary of the secret trust is sufficient to operate as an as-
    signment although the grantor may have believed in his ability
    to pay his debts in full.
2. SAME—GUARANTOR A "DEBTOR."—A guarantor of the debts of
    another is a "debtor" within the meaning of section 1910 of the
    Kentucky Statutes against fraudulent preferences.
3. SAME—HOMESTEAD.—To the extent that such a conveyance oper-
    ated to pass title to exempt property, the beneficiary of the
    secret trust will be entitled to the benefit of the conveyance to
    the exclusion; (1), of the debtor; and (2), of his assignee.

JAMES QUARLES FOR APPELLANTS.     (QUARLES, SPENCE &
    QUARLES OF COUNSEL.)

1. A mere guarantor of the payment of a debt is not a "debtor" of
    the party whose debt is guaranteed, within the meaning of that

[ 51 ]

Allen's Sons v. Dillingham's Assignee, etc.

term as used in the act of 1856. Brandt on Suretyship and Guaranty, sec. 1; Daniel on Negotiable Instruments, sec. 1753; Reigart v. White, 52 Pa. St., 440; Kramph's Ex. v. Hatz's Ex., 52 Pa. St., 525; Campbell v. Sherman, 31 Am. St. R., 736; Marburger v. Pott, 16 Pa. St., 9; Donley v. Camp, 22 Ala., 659; Bouvier's Law Dictionary, "Debtor," p. 486; Rapalje & Lawrence Law Dictionary, "Debt" and "Debtor," pp. 351 and 354; Thompson v. Heffner's Ex., 11 Bush, 353; Davis v. Gardiner & Co., 1 Bush, 272.

2. The act of 1856 is in conflict with the common law, and must be strictly construed. Brooks v. Staton's Admr., 79 Ky., 174.

3. The act must be done in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion, in whole or in part, of others. The intent of the debtor is the essential element, and must be ascertained from all the facts and circumstances of the particular case. Grimes v. Grimes, 86 Ky., 511; Heidrich v. Silva, 89 Ky., 422; Walker, &c. v. Davis, 19 Ky. Law Rep., 1313; Hampton v. Morris, 2 Met., 336.

4. Even though the debtor was insolvent at the time of the transaction attacked, or was contemplating insolvency, yet if the circumstances show that no preference was intended, the transaction is not within the statute. Heidrich v. Silva, *supra.*

5. Great weight should be given to the uncontradicted testimony of the debtor himself regarding his design or purpose; and the fact that he made an assignment a short time after executing the deed complained of, is not sufficient to show knowledge of insolvency at the time, or that insolvency was contemplated. Levis v. Zinn, 93 Ky., 628.

6. Appellants are, in any event, entitled to a prior claim upon the property for the amount of the debtor's homestead exemption. Ky. Stat., secs. 1702, 86, 1913; Lishy v. Perry, 6 Bush, 515; Fuqua v. Ferrell, 80 Ky., 69; Baker v. Kinnaird, 94 Ky., 5; Calloway v. Calloway, 19 Ky. Law Rep., 870.

D. I. HEYMAN FOR APPELLEES.

1. Dillingham's guaranty is within the act of 1856. (a.) The guaranty is an absolute one. Daniel on Neg. Instr., vol. 2, sec. 1769; Colebrooke on Collateral Sec., secs. 253, 261; Brandt on Suretyship & Guaranty, vol., 1, sec. 102; Ely v. Bibb, 7 J. J. M., 72; Lowe v. Beckwith, 14 B. M., 150; Levi v. Mendell, 1 Duv., 77; City of Memphis v. Brown, 87 U. S. Sup. Ct., 289; Brown v. Curtis, 2 N. Y., 225; Wren v. Pearce, 4 Smedes &

Mar., 91; Burnham v. Ballentine, 11 Ind., 295.   (b.) A guaranty
is a debt, a guarantor a debtor, and the holder of the guar-
anty creditor within the meaning of the act; Newhavens Saw
Mill Co. v. Fowler, 28 Conn., 108; Rapalje & Lawrence's Law
Dict., vol. 1, 353; Brooks, Waterfield & Co. v. Staton's Admr.,
79 Ky., 174; Terrill v. Jennings, 1 Met., 450; Corn v. Sims, 3
Met., 391; Thompson v. Heffner's Exrs., 11 Bush, 353; McCann
v. Hill, &c., 85 Ky., 574; King v. Moody, 79 Ky., 63; McKee v.
Scobee, 80 Ky., 124; Ky. Stats., sec. 1910.

2. The deed to Arnold was executed by Dillingham in contempla-
tion of insolvency and with the intent to prefer the Allens to
the exclusion, in whole or in part, of his other creditors.   (a.)
It is not necessary the debtor shall know his condition.   It
is sufficient if the act inhibited by the statute is done in con-
templation of insolvency.   Thompson v. Brungs, 83 Ky., 400;
Taylor's Admr. v. Taylor's Assignee, 78 Ky., 470; Grimes, As-
signee v. Grimes, 86 Ky., 511; Ringold v. Smith, 9 Ky. Law
Rep., 441.   (b.) The debtor is presumed to know his condition,
and it is of no importance that he believed he was solvent, if
in fact he was insolvent when the preferential act occurred.
Ringold v. Smith, 9 Ky. Law Rep., 441; Hoffman v. Brungs, 83
Ky., 400.   (c.) It is not material that the creditor should know
the debtor's condition or of his intention to prefer.   Fogarty
v. Pace, 4 Ky. Law Rep., 999; Nock's Exr. v. Goodloe, 5, Ky. Law
Rep., 247; Drake v. Ellman, 80 Ky., 434.

3. The deed to Arnold being within the act of 1856, and Dilling-
ham and wife having both executed it, the Allens can not take
the value of Dillingham's homestead exemption under it.   Can-
trill v. Risk, 7 Bush, 158; Gideon v. Struve & Wife, 78 Ky., 134;
Lishy v. Perry, 6 Bush, 515; Baker v. Kinnaird, 94 Ky., 5.

JAMES QUARLES FOR APPELLANTS IN A PETITION FOR A REHEARING.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

This appeal is prosecuted from a judgment of the Jef-
ferson circuit court, chancery division, rendered in the
suit of H. V. Loving, assignee, etc., against Charles E.
Arnold, etc.; the object of the action being to obtain a
judgment holding that a certain conveyance of a house
and lot in Louisville, Ky., to Charles E. Arnold, was made
with the intent to prefer N. R. Allen's Sons, and in con-

templation of insolvency upon the part of the vendor, Dillingham. The opinion of the court below contains so clear a statement of the matter in controversy, as well as the law applicable thereto, that we copy as follows from said opinion:

"The Curd & Sinton Manufacturing Company was a corporation organized in 1889 under the general laws of Kentucky, with corporate power to carry on the manufacture of saddles, harness, etc., at Louisville. Its capital stock was $100,000. From the beginning of its business, W. H. Dillingham was a stockholder and president of the corporation. He held originally $25,000 of the stock, and his holding was enlarged in 1894 to $75,000. During the continuance of the business of the corporation he resided in Louisville, and he now resides there. The defendants Charles Allen and Nathan Allen reside in Kenosha, Wisconsin, where they have carried on for many years the business of leather manufacturers as partners under the firm name of N. R. Allen's Sons. The Curd & Sinton Manufacturing Company was a customer of N. R. Allen's Sons during the entire term, or nearly so, of its business existence; and, until the guaranty hereinafter stated was executed, sales made by N. R. Allen's Sons to the Curd & Sinton Manufacturing Company were upon the sole credit of the corporation. In December, 1894, W. H. Dillingham and Harry Sinton were the only stockholders of the corporation; Mr. Dillingham owning $75,000, and Mr. Harry Sinton $25,000, of the $100,000 of the capital stock. At that time N. R. Allen's Sons, following a business policy which they had adopted, requested Mr. Dillingham and Mr. Sinton to guaranty personally the present and future indebtedness of the corporation to them. Complying with this request a paper was executed and delivered in the

following language: 'Louisville, Ky., December 19, 1894. N. R. Allen's Sons, Kenosha, Wis.—Gentlemen: In reply to your letter on the 18th inst., we, the undersigned, in consideration of one dollar to us in hand paid by N. R. Allen's Sons, and other good and valuable considerations, do hereby, singly and collectively, guaranty to said N. R. Allen's Sons the payment of any indebtedness now contracted, or which may hereafter be contracted, by the Curd & Sinton Manufacturing Company, of Louisville, in favor of said N. R. Allen's Sons. W. H. Dillingham. Harry Sinton.' The indebtedness of the Curd & Sinton Manufacturing Company to N. R. Allen's Sons aggregated in March, 1897, about $19,540. Mr. Dillingham individually owned a costly dwelling house on Broadway, in Louisville, where he, with his family, resided; and on the 27th of March, 1897, he conveyed this dwelling house and lot to the defendant, Charles E. Arnold, for the recited consideration of $26,000. His wife joined in the conveyance. Mr. Arnold is a brother-inlaw of the defendant, Allen, and resides in Milwaukee, Wisconsin. It is not now disputed that this conveyance was made to Arnold to the use and benefit of N. R. Allen's Sons—a trust wholly undeclared in the deed; that the consideration was not in fact $26,000, but $20,000; and that the consideration was paid in most part by the transfer to W. H. Dillingham of the indebtedness of the Curd & Sinton Manufacturing Company to N. R. Allen's Sons, aggregating about $19,540, and represented by promissory notes of the corporation, except as to $1,400, which latter sum stood in open account. On the 26th of May, 1897, two months after the execution of the deed from Dillingham to Arnold, both the Curd & Sinton Manufacturing Company and W. H. Dillingham individually made deeds of assignment of their respective

property to the plaintiff, H. V. Loving, as assignee for the benefit of their creditors. That both the corporation and Mr. Dillingham were insolvent at the time of the assignments is nowhere disputed. This suit was brought by the assignee of W. H. Dillingham, attacking the deed from Dillingham to Arnold as a preferential arrangement made to favor N. R. Allen's Sons to the detriment of the other creditors of Dillingham, and seeking to recover the property to the use of the assigned estate, under the provisions of the Kentucky Statutes authorizing such actions by assignees. Ky. Stat., sec. 84.

"The defendants, at the outset, contend that the transaction, in any event, is not within the act of 1856 against preferences by debtors, for the reason that Dillingham was not a debtor of N. R. Allen's Sons, within the meaning of the act. The act (Ky. Stat., sec. 1910) is as follows: 'Every sale, mortgage or assignment made by debtors, and every judgment suffered by any defendant, or any act or device done or resorted to by a debtor, in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion, in whole or in part, of others, shall operate as an assignment and transfer of all the property and effects of such debtor, and shall inure to the benefit of all his creditors (except as hereinafter provided) in proportion of the amount of their respective demands including those which are future and contingent; but nothing in this article shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if the same be lodged for record within thirty days after its execution.' Undoubtedly, if Mr. Dillingham's obligation to N. R. Allen's Sons upon his guaranty of the indebtedness to them of the Curd & Sinton Manufacturing Company was not such as made

him a debtor to them, within the meaning of the act, then
his conveyance to Arnold is unassailable, for at common
law the transaction is a valid one.   The argument for the
defendants is that the liability of one who guarantees the
payment of a debt of another is purely collateral, and con-
tingent upon a future event, namely, the failure of the
debtor to pay the debt at its maturity, and, beyond this,
that the liability of the guarantor is further contingent
upon giving him seasonable notice of the default of the
principal debtor.    Such a contingent obligation, it is
argued, is not a debt, and he that is under it is not a
debtor, but possesses the potentiality of becoming a
debtor.   Whatever may be the rule in other States, it is
the well-established law of Kentucky that, in order to fix
the liability of one who has guaranteed the debt of an-
other, it is not necessary to give the guarantor notice of
the default in payment by the principal debtor.   Upon such
default the guarantee is broken, and an action will at once
lie against the guarantor.   Lowe v. Beckwith, 14 B. Mon.,
184. [58 Am. Dec., 659].   Certainly it is true that, if the prin-
cipal debtor pays the debt at maturity, that fact absolves
the guarantor.   The same is true of one who is a surety
There is no substantial difference between a surety and a
guarantor.   Certainly the former obliges himself by join-
ing the principal in the original instrument or agreement,
whilst the obligation of the latter is collateral and apart
from the original instrument or agreement.   But in sub-
stance there is no difference.   I think it can not be said,
whatever may be the technical differences between the
obligation of a surety and the obligation of a guarantor,
that the Legislature, in employing the word 'debtor' in the
statute under consideration, intended to include one and
exclude the other.   The evil of preferential arrangements

by one is quite as great as the evil of preferential arrange-
ment by the other. It can not be doubted that a surety
is a debtor, within the meaning of the act. In the very
nature of things, the case must be an exceptional one
where the surety would undertake to prefer a creditor to
whom he is only bound as surety; and such a case, so far
as I know, has not been before the Court of Appeals.
Nevertheless that court has decided that an act of prefer-
ence in favor of individual creditors, to the exclusion of
creditors to whom the actor is bound only as surety, is
within the act of 1856, which is at last to hold that a
surety is a debtor, within the meaning of that act. King
v. Moody, 79 Ky., 63. I hold that Mr. Dillingham, upon his
guarantee, was a debtor of N. R. Allen's Sons, within the
meaning of the act of 1856. The conveyance from Dilling-
ham to Arnold was obviously made for the purpose of
paying the debts due from the Curd & Sinton Manufactur-
ing Company to N. R. Allen's Sons, and of discharging the
obligation of Dillingham to that firm upon his guarantee
of the payment of those debts. It is wholly immateral
that the notes of the corporation to Allen's Sons were
by them transferred to Dillingham, and that the latter
took credit therefor upon the books of the corporation.
Whatever form the transaction took, the essential pur-
pose was to pay Allen's Sons; and that was the essential
effect, if the conveyance is to stand. Now it is contended
for the defendants that Mr. Dillingham did not make the
conveyance in contemplation of insolvency, nor with the
design to prefer Allen's Sons to the exclusion either in
whole or in part of his other creditors. That Mr. Dilling-
ham did not believe at the time of the conveyance that he
was then insolvent is in no sense decisive of this point.
Undoubtedly, both he and the corporation at and before

that time were in great financial straits—a condition of
affairs which Mr. Dillingham knew and felt the burden for
a considerable time before the deed was made.    These are
the landmarks:   (1) Extreme financial embarrassment at
the time the deed was made.   (2) An effort to secure at
least a part of the debt due Allen's Sons by the execution
of mortgage bonds, payable to bearer, upon the plant of
the corporation, which was abandoned because the bonds
were of no value without recording the mortgage, and the
mortgage was not recorded for fear of unpleasant conse-
quences.   (3) The conveyance of Mr. Dillingham's dwell-
ing, practically his only unincumbered assets, to Arnold,
to the use of Allen's Sons, in payment of their pre-exist-
ing debts.     (4) The assignment of both the corporation
and Mr. Dillingham within two months after making the
conveyance to Arnold.   (5) The condition of affairs was
substantially the same at the time of the assignment as at
the time the deed to Arnold was made.    There was be-
tween those times no material disturbance or change of
the relationship between assets and liabilities.    There
were no sudden losses or calamities or casualties.    It
would be difficult to conclude from this outline of facts
that the conveyance was not made in contemplation of in-
solvency.   The facts in detail in no sort relieve the situa-
tion.   These need not be gone over.   It will be sufficient
to refer to their salient features:   The appraisement of
Mr. Dillingham's assets and statement of his liabilities
made soon after the date of assignment shows an aggre-
gate of direct liabilities of $153,080.50; and of contingent
liabilities, $70,460.15; and the aggregate value of assets,
$116,531.   What Mr. Dillingham owed at the time of the
assignment he owed at the time of making the deed to
Arnold, and what property he owned at the one time he

owned at the other. This is true, substantially, and it is undisputed. Moreover, between the two dates there had been no severe fluctuations in the values of his property; and beyond this, with inconsiderable exceptions, his property consisted of stock and bonds, the market value of which was easily ascertainable from day to day. Mr. Dillingham might have known at the date of the deed to Arnold that his stock in the corporation was a worthless asset, or at all events nearly so. While it is perfectly certain that he did not know that fact, because he says so, nevertheless his want of knowledge can avail nothing, under the circumstances of this case. The conveyance to Arnold must be held to have been made in contemplation of insolvency, within the meaning of the act of 1856. Thompson v. Heffner's Ex'rs, 11 Bush, 353.

"It remains to be determined whether the conveyance to Arnold was made by Mr. Dillingham with the intent to prefer Allen's Sons to the exclusion in whole or in part of his other creditors. Certain it is that the conveyance, if it is to stand, has the effect of preferring Allen's Sons, and of excluding the other creditors of Mr. Dillingham, at least in part. The business relationship between Mr. Dillingham, through the Curd & Sinton Manufacturing Company, and Allen's Sons, was such as to excite a desire in Mr. Dillingham to save them from loss, if possible. That was a natural and just sentiment. That he entertained such a desire is evidenced by a letter written by him to Allen's Sons with reference to the conveyance to them of his dwelling house, and before the conveyance was made. The letter is dated March 15, 1897, and in it, among other things, Mr. Dillingham says:  'Therefore I have about made up my mind, if you are still willing to make the deal which was proposed when you were here, that I will accept

it, as it would be an immense relief to the business for the time being—say, for at least two years; and in case that the business of the country generally improves, and if, under those circumstances, there is any profit to be made in the saddlery and harness business, of course, I would pull out, and make the money with which to redeem the house, etc.; and in case the general business of the country does not improve, or in case, for any reason, there should be no profit, and only continuous loss, in this business, I would desire, of all things, that N. R. Allen's Sons should be safely protected against any loss whatsoever. In the event that the Curd & Sinton Manufacturing Company should go down, I would wish the transfer of the house to your firm to be made so early, and so long before such an event, that no one could possibly come into court and plead that it was done while we were in the contemplation of bankruptcy, and hence, under our law, that it was an act of bankruptcy, and should be set aside.' It is vain to say, in the presence of this letter, either that Mr. Dillingham did not make the conveyance in contemplation of insolvency, or that he did not make it with the intent to prefer Allen's Sons."

It seems to us that in view of the foregoing facts, as recited in the opinion *supra*, and which opinion is fully authorized by the evidence, the judgment adjudges the conveyance in question to operate as an assignment of the property of Dillingham for the benefit of his creditors was proper. But it is further insisted for appellants that, even if the judgment holding the conveyance to operate as an assignment should be affirmed, the court below erred in not allowing or adjudging to appellants $1,000 interest in the property conveyed, or, in other words, not adjudging that they should be paid $1,000 out of the proceeds,

being the value of the homestead right of Dillingham.
The case of Gideon Burton and Co. v. Struve and Wife,
78 Ky., 134, when property understood and considered,
does not sustain the judgment of the court below in
denying to appellants the $1,000.    It will be seen from
the statute under which this suit is prosecuted that
a conveyance made in contemplation of insolvency
only operates to subject the property of the ven-
dor not exempt from execution, and it has been repeatedly
held by this court that a party may convey exempt prop-
erty for the purpose of preferring a creditor without such
conveyance being held to operate as an assignment of his
property for the benefit of all his creditors.    In other
words, a debtor may make such disposition of his exempt
property as to him may seem right, and no creditor can
be heard to complain.    If Dillingham had included a sep-
arate homestead worth $1,000 in the conveyance to appel-
lants, for the purpose of preferring them, and in contem-
plation of insolvency, it would hardly be contended that
the vendee could not hold the same.    If the appellee or other
creditors had obtained an execution and levied upon the
property in question, the same appearing to be indivisible,
and it had been sold at the price of $20,000, unquestiona-
bly Dillingham would have been entitled, under the stat-
ute, to $1,000 of the purchase money.    It can make no dif-
ference, in principle or in equity, that Dillingham had con-
veyed the entire property to the appellant Arnold for the
benefit of N. R. Allen's Sons.    To the extent that he can
pass a perfect and indefeasible title to the property, the
same must necessarily inure to the benefit of his vendee.
Hence it follows that the appellants are entitled, in addi-
tion to the sums allowed to them in the judgment, to the
further sum of $1,000, to be paid out of the proceeds of the

sale of the property in question; and, in the event (which is not probable) the property should only sell for $1,000,, appellants would be entitled to the whole thereof. This court, in Calloway v. Calloway, 19 Ky. Law Rep., 871 [39 S. W., 241], substantially announced the doctrine herein indicated.    For the reason indicated the judgment appealed from is reversed and cause remanded, with directions to adjudge to appellants $1,000 out of the proceeds of the sale of the property in question, and for proceedings consistent herewith.