## National Roofing Materials Company v. Smith, et al.

(Decided October 5, 1915.)

Appeal from Boyle Circuit Court.

1. Fraudulent Conveyances—Burden of Proof—Ownership and Fraudulent Transfer.—A creditor seeking to reach property of the debtor alleged to have been fraudulently transferred to his wife has the burden of showing that the property belongs to the debtor and was fraudulently transferred.

2. Fraudulent Conveyances—Burden of Proof—Consideration.— Where property does not belong to a wife until the transfer from her insolvent husband, it then devolves upon her to show, as against a creditor, that there was a valid consideration for the transfer.

3. Fraudulent Conveyances—Sufficiency of Evidence—Consideration. —Evidence in a creditor's action to reach the property of an insolvent debtor alleged to have been fraudulently transferred, held sufficient to show consideration for the transfer.

4. Fraudulent Conveyances—Evidence.—The mere payment of a valid obligation is not a fraud upon the creditor, although, if the debtor be insolvent at the time, it may be assailed as a preference under Section 1910, Kentucky Statutes, if suit is brought within six months after payment is made.

5. Fraudulent Conveyances—Insolvency—Proof Of.—In a suit by a creditor to reach the property of the debtor alleged to have been fraudulently transferred, evidence examined and held insufficient to show that the debtor was insolvent.

W. S. LAWWILL for appellant.

J. W. RAWLINGS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY; COMMISSIONER——Affirming.

On November 19th, 1907, A. W. Smith purchased from the National Roofing Materials Company a carload of roofing material for the price of $481.65, and executed his note for that sum, payable in sixty days. The note not being paid at maturity, the company brought suit thereon and recovered judgment. On October 7th, 1908, execution was issued thereon and returned "no property found" on November 14th, 1908.

On December 14th, 1908, the roofing company brought this suit against A. W. Smith and his wife, Laura Smith, to enforce satisfaction of the judgment, and to set aside as fraudulent a conveyance of certain real estate in the City of Danville, made by Gentry and Kenney to Laura Smith. The petition charges, in substance, that A. W. Smith was the real purchaser of the property; that it was paid for with his money, $2,500.00 of which was transferred to his wife without valuable consideration; and that the property was conveyed to his wife with the intent to hinder, delay and defraud the plaintiff in the collection of his debt. These allegations were denied by answer. On final hearing the petition of plaintiff was dismissed. Plaintiff appeals.

The facts are these: About the time of the execution of the note, A. W. Smith owned about $6,000 worth of real estate, $1,800 worth of horses and certain wagons, stock and supplies used in conducting his business. On December 4th, 1907, he sold the real estate for $6,005. One-third of the sum was paid in cash and notes executed by the purchaser for the balance. There was a mortgage on the property for $1,200, which was paid when the sale was completed. Afterwards the horses were sold for about $1,800. A month or two before June 1st, 1908, A. W. Smith collected the notes given for the deferred payments on the property which he had sold. Twenty-five hundred ($2,500) dollars of this sum he drew from a Danville bank and deposited in a bank at Stanford to the credit of his wife. On July 1st, Mrs. Smith bought from Gentry and Kenney the house and lot which it is sought to subject to her husband's debt. The purchase price was $2,750, of which sum $2,500 was paid in cash and a note executed for the balance. The $2,500 deposited in the bank at Stanford was used to make the purchase.

The lien note was afterwards discharged out of the proceeds of a horse and cow that Mrs. Smith owned.

To show the alleged fraud, plaintiff took the depositions of both Mr. and Mrs. Smith. Their evidence shows that Mrs. Smith received $2,315 from her father's estate and that she had certain live stock worth about $700. All of this money she loaned to her husband. The rule is that the burden of proof is upon the creditor to show that the property belongs to the debtor and that it has been fraudulently transferred to the wife. Guthrie v. Hill, 138 Ky., 181; Cogar v. National Bank of Lancaster, 151 Ky., 407. But when it is shown that the property never did belong to the wife until the transfer and loans, and that the husband at that time was insolvent, it then devolves upon the wife to show that there was a valid consideration for the transfer. Stix v. Callender, 155 Ky., 806. This burden is not sustained, of course, where the debts in consideration of which it is claimed the transfer was made, are so vague and indefinite that it cannot be shown when and for what amount, or for what purpose, they were created, or that the wife, in fact, ever had any property. In the present case it is admitted that Mrs. Smith received $2,315 from her father's estate. She says that she possessed certain live stock of the value of about $700. It is true she is unable to describe or name all of the stock, but her husband's testimony, which the plaintiff itself took, shows that she owned some cattle, which she sold for $225, some hogs which she sold for $50, a cow and calf for $67, a mare for $190, and a young horse for something over $100. While Mrs. Smith was unable to mention all the property she owned or the prices brought, we think that her testimony, supplemented by that of her husband, is sufficient to show that, in addition to the $2,315 which she turned over to her husband, she also turned over to him about $700. Both Mr. and Mrs. Smith testify that this sum, in addition to the $2,315 received from her father's estate, was loaned to the husband. Here, then, we have a case where the husband was actually indebted to the wife, and the sums of money turned over by him were for the purpose of paying that debt. The mere payment of a valid obligation is not a fraud under the statutes relied on by plaintiff, although, if the debtor be insolvent at the time, it may be assailed as a preference under Section 1910, Kentucky Statutes, if suit be brought within six months after

the payment is made.   Seiler v. Walz, 100 Ky., 109.   Here, the payment of $2,500 was made prior to June 1st, 1908. This suit was not filed until December 14th, 1908, or more than six months thereafter.   Therefore, suit was too late so far as that item is concerned.

But it is insisted that improvements amounting to $400 were made on the property and these payments were made by Mr. Smith within six months.   It is not clear from the evidence whether these payments were made by him individually or from money belonging to his wife. However this may be, we are unable to find in the record sufficient evidence of his insolvency at the time of such payments.   The evidence shows that he had a large sum of money in his hands about that time and does not show that his liabilities exceeded his assets.   True, an execution was returned "no property found" some three or four months after such payments.   In view of the assets, which he is shown to have had when the payments were made at the time, we are of the opinion that the return on the execution did not sufficiently show that he was insolvent some three or four months before, in the absence of any definite showing as to what debts he then had.   For aught that appears in the record, he may have had sufficient property to pay all his debts when the improvements were paid for, and have spent or disposed of it by the time execution was returned.   Insolvency being a prerequisite of a preferential transfer and the evidence being insufficient to show Mr. Smith's insolvency, it follows that a case of preferential transfer was not made out.

After carefully considering the evidence, we see no reason to disturb the finding of the chancellor.

Judgment affirmed.