## W. R. May v. Pikeville National Bank, et al.

## Pikeville National Bank v. Willie May, et al.

(Decided February 25, 1927.)

### Appeals from Pike Circuit Court.

1. Assignments for Benefit of Creditors—Father-in-Law, to Whom Insolvent Debtor Conveyed Farm for Creditors, Held to Have Accepted Trust in Suit for Preferential Transfer.—In suit by cred-

itors against insolvent debtor and father-in-law to whom debtor made an assignment of his farm for creditors for preferential distribution of proceeds of sale thereof, evidence held sufficient to show father-in-law accepted trust created by deed.

2.  Appeal and Error—Judgment Dismissing Petition as to One Defendant Must be Affirmed, Where no Relief is Sought Against Him on Appeal.—In suit by creditors against insolvent debtor and his trustee for preferential transfers, judgment dismissing case as to purchaser of debtor's farm must be affirmed where, on appeal, purchaser was made party, but no relief sought against him.

3.  Appeal and Error—Where One of Defendants, Against Whom Judgment was Entered by Default, Took no Appeal, Judgment as to Him Should Not be Disturbed.—In suit against insolvent debtor and his trustee for creditors, based on alleged preference, judgment by default against debtor, who took no appeal, should not be disturbed.

4.  Assignments for Benefit of Creditors—Trustee of Insolvent Debtor, Who Improperly Distributed Debtor's Assets, Held Not Liable for Claims of Creditors in Excess of Assets Received.—In suit by creditors of insolvent debtor against debtor and his father-in-law, to whom he assigned farm for creditors' benefit, awarding personal judgment against father-in-law, as trustee, for total amount of plaintiffs' claims, based on trustee's preference of certain creditors and improper distribution of assets received, held error, where amount received by trustee was insufficient to pay claims, and where such amount was distributed in part to creditors having claim to pro rata distribution.

5.  Assignments for Benefit of Creditors—Unpaid Creditors Could Not Complain that Assets of Insolvent Debtor Had Been Used to Pay Other Creditors Pro Rata Share.—Where father-in-law of insolvent debtor, who assumed trust for benefit of creditors, paid money received from sale of debtor's farm to certain creditors to exclusion of others, other creditors could not complain of payment except as to amount paid over pro rata share to which creditors, who were paid, were entitled to receive.

6.  Assignments for Benefit of Creditors—Trustee of Insolvent Debtor, Splitting Assets Between Debtor and Certain Creditors, Held Liable to Unpaid Creditors for Amount Given Debtor, and Excess Over Pro Rata Share Paid Other Creditors (Ky. Stats., Section 1910).—Where father-in-law of insolvent debtor, assuming trust for benefit of creditors, applied proceeds from sale of debtor's farm, in part to specified creditors and in part to debtor's benefit, trustee held liable to unpaid creditors for portion of assets improperly given debtor and excess over correct pro rata distribution paid to other creditors, transfers being preferential and inuring to benefit of all creditors under Ky. Stats., section 1910.

7.  Assignments for Benefit of Creditors—Certain Creditors Suing Trustee of Insolvent Debtor, Improperly Distributing Assets, Could Not Exhaust Trustee's Liability at Expense of Unpaid Creditors Not Parties (Ky. Stats., Section 1910, et seq. 1913).—In suit by certain unpaid creditors against insolvent debtor and his father-in-

law, who assumed trust for benefit of creditors, under Ky. Stats., section 1910 et seq., making every act of debtor in contemplation of insolvency, with design to prefer certain creditors to exclusion of others, effective as assignment for creditors, liability of trustee for assets received from sale of debtor's farm could not be exhausted by personal judgment in behalf of limited number of creditors only, where other creditors who had not been paid did not join in suit, as section 1913 requires that assets of insolvent debtor be turned over to receiver for benefit of all creditors.

8. Assignments for Benefit of Creditors—Insolvent's Payment of Certain Creditors and Assignment of Judgment Held Preferential, Effective as Assignment for all Creditors (Ky. Stats., Section 1910).—Payment by insolvent debtor and trustee of claim of bank and of trustee's children, and assignment of judgment in debtor's favor to debtor's father to exclusion of other creditors, held preferential transfer of all debtor's property for benefit of all creditors, under Ky. Stats., section 1910.

9. Assignments for Benefit of Creditors—Right of Holders of Notes of Insolvent Debtor to Pro Rata Share Held Not Prejudiced by Failure of Debtor's Trustee, Who was Indorser, to Present Claims in Suit by Other Creditors (Ky. Stats., Section 1913).—In suit by creditors against trustee of insolvent debtor, based on trustee's improper distribution of assets received from sale of farm, rights of holders of notes not joined in suit could not be prejudiced by fact that trustee who indorsed notes had not made any claim thereunder, in view of Ky. Stats., section 1913, requiring that after fraudulent conveyance assets of insolvent debtor be turned over to receiver for benefit of all creditors.

10. Assignments for Benefit of Creditors—Attachment of Judgment in Favor of Insolvent Debtor, Who Made Fraudulent Conveyance, was for Benefit of all Creditors (Ky. Stats., Section 1913).—Where insolvent debtor conveyed farm, with intent to prefer certain creditors to the exclusion of others, judgment in debtor's favor attached by certain unpaid creditors was required to be turned over to receiver, in order that debtor's assets might be distributed among all creditors, as required by Ky. Stats., section 1913.

11. Assignments for Benefit of Creditors—Where Assets of Insolvent Debtor Were Preferentially Paid Certain Creditors, Payments Should be Turned Over to Receiver for Benefit of all Creditors (Ky. Stats., Sections 1910, et seq., 1913-.—Where insolvent debtor conveyed farm and trustee paid part of proceeds to certain creditors to exclusion of others, in violation of Ky. Stats., section 1910, et seq., court, in suit by certain unpaid creditors against trustee, insolvent debtor, and preferred creditors, should set aside payments as preferential and require that money be turned over to receiver, under section 1913, or that bond be given by preferred creditors to pay all sums received by them over their pro rata of estate.

12. Assignments for Benefit of Creditors—Judgment which Insolvent Debtor Preferentially Assigned Should be Paid to Receiver for Benefit of all Creditors (Ky. Stats., Section 1913).—Where in-

solvent debtor preferentially assigned judgment, court, in suit by
creditors, should require judgment to be paid to receiver for
benefit of all creditors, under Ky. Stats., section 1913, requiring
that after preferential transfer debtor may be required to sur-
render assets to receiver.

HARMAN, FRANCIS & HOBSON for appellant W. R. May.

J. J. MOORE, ZACH JUSTICE, ROSCOE VANOVER and J. R.
JOHNSON for appellees Pikeville National Bank and others.

MOORE & CHILDERS for appellant Pikeville National Bank.

JOHNSON, AUXIER & HINTON for appellees Willie May and
others.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirm-
ing in part and reversing in part.

These two cases have been ordered to be heard to-
gether by this court and will be disposed of by one
opinion.

In the fall of 1924, J. E. Polley was heavily involved
and insolvent. It is conceded in this record that the only
property he then owned was an equity in a farm in Pike
county and a judgment he had obtained in what is known
in this record as the Bowles litigation, and which judg-
ment we shall hereafter refer to as the Bowles judgment.
The Pikeville National Bank, which is appellee in one of
these appeals and appellant in the other, held at this
time an overdue note of J. E. Polley in the sum of
$2,200. It was pressing Polley for either payment or
additional security, the collateral which it then held being
conceded by all to have been worthless. Polley's father,
the appellee J. B. Polley, informed the bank that his son
was going to make an assignment for the benefit of his
creditors. This contemplated action on the part of J. E.
Polley was entirely agreeable to the bank, and hence it
did not at once file an attachment suit it was purposing
then to do.

On the third day of October, 1924, J. E. Polley, his
father, J. B. Polley, and the appellant W. R. May, who
is the father-in-law of J. E. Polley, met in Pikeville and
proceeded to the office of Hon. E. D. Stephenson, an
attorney, who pursuant to the directions of these gentle-
men, drew up a deed of assignment, conveying the in-
terests of J. E. Polley and his wife in the farm above
mentioned to W. R. May in trust for their respective

creditors. This deed was duly executed and acknowledged by J. E. Polley and his wife and was then carried to the courthouse by W. R. May's son, who left it with the county clerk, but with directions not to record it until told to do so. This son paid the clerk, however, the recording fee, and the clerk stamped on the cover of the deed the legend that it had been filed. The clerk put this deed of trust among the unrecorded deeds, pending further instructions as to its recording. The president of the Pikeville National Bank learned that this deed was in the clerk's office, and, believing that his bank was protected thereby, took no steps to procure an attachment on its claim. During this month of October, J. E. Polley and his wife entered into negotiations with Hon. J. E. Childers, which resulted in a sale by them of the farm in question to Judge Childers for the sum of $5,000 in cash, a note of Judge Childers in the sum of $3,965.83, and the assumption by him of the outstanding liens against the property. It is conceded by all to this litigation that this was a good sale, and no one is asking that it be set aside on this appeal. It is perfectly plain from this record that Judge Childers knew about the deed which J. E. Polley and his wife had made to W. R. May, because in the deed which Judge Childers prepared for the transfer of the farm to himself he made W. R. May one of the party grantors. Before the deed was signed, however, he struck out with a pencil all the provisions in it relating to W. R. May. J. E. Polley lived some distance from Pikeville, and Judge Childers went to his home to consummate the transaction. W. R. May also came to Polley's home at this time. He reluctantly admits in his testimony that, until told by his son, Ollie, that Judge Childers had said that it was unnecessary for him to sign the deed conveying the farm to Judge Childers, he thought that he would have to do so. Polley and his wife executed and acknowledged the deed Judge Childers had prepared. Judge Childers thereupon gave J. E. Polley his check for $5,000 and his note for $3,965.83, both of which Polley at once handed over to May, his father-in-law. May and Polley then got upon the train and went to Pikeville. On arrival there, they both went to the First National Bank, which held a note of Polley for $5,000 on which May was surety. The check was cashed by this bank and Judge Childers' note, on being indorsed by W. R. May, was discounted by it. Out of the proceeds of

this transaction the $5,000 note was paid and the balance, less $3,000 cash which May gave to his son-in-law Polley, was put by this bank to the credit of W. R. May. Polley at once replaced in the custody of his father-in-law, W. R. May, the $3,000 mentioned, subject to his call. The $965. 83, being the balance of the transaction of the cashing of the check and discounting of the note, was paid by W. R. May to his three children, Mousie May, Willie May and Ollie May, as part payment on the indebtedness of their brother-in-law, J. E. Polley, to them. In the meantime and during this month of October, J. E. Polley undertook to assign on the margin of the judgment book the Bowles judgment, but he failed to designate in the assignment any assignee. Thereafter he went to his father-in-law, May, and obtained from the latter the $3,000 held by him. Instead of using this sum to pay his just debts, J. E. Polley spent it on a trip to Florida.

In the meantime the Pikeville National Bank, learning of the Childers' transaction, brought its suit, setting up, in substance, the facts we have above outlined. It averred that the payments, made to the May children and to the First National Bank by J. E. Polley, were made by him when he was insolvent and with the purpose on his part to prefer them over his other creditors. It asked that it be given a personal judgment for its debt against both J. E. Polley and W. R. May; that the payments to Ollie May, Willie May, and Mousie May, and to the First National Bank, be declared preferential, within the scope of section 1910 of the statutes; that these payments be held to inure to the benefit of all the creditors of J. E. Polley, including the Pikeville National Bank, *pro rata;* and that the cause be referred to the master commissioner for the purpose of settling the estate of J. E. Polley. The Pikeville National Bank also made a party to its suit the Day and Night Bank of Pikeville, claiming that the Bowles judgment had been assigned to it by J. E. Polley in payment of a note of some $2,000 that he owed it and on which his father, J. B. Polley, was surety. It was later discovered that this statement was a mistake, and the Pikeville National Bank by an amended petition withdrew it. However, in so far as disclosed by this record, the debt due by J. E. Polley to the Day and Night Bank has never been paid. The Pikeville National Bank also procured an attachment in its suit, which it had duly levied by being served on the master commissioner of the

Pike circuit court through whom the Bowles judgment would have to be paid. Thereafter the name of J. B. Polley, the father of J. E. Polley, was put on the margin of the judgment book by some one as the assignee of the Bowles judgment. By amended petition the Pikeville National Bank asked that this assignment to J. B. Polley be held invalid, or, at least, preferential. It was the theory of the Pikeville National Bank that W. R. May had accepted the trust under the deed of assignment to which we have referred, and that, in breach of his duties as trustee, he had paid out the trust funds which had come into his hands by paying certain claims in full, leaving other claims, including that of the Pikeville National Bank, unpaid when he should have pro rated these funds among all the creditors of J. E. Polley. May has stoutly defended this suit on the idea that he never accepted the trust, and hence was in no wise concerned with this litigation. The May children and the First National Bank did not deny receiving the payments made to them, but they did deny that the payments were made to them by J. E. Polley with any intent on his part to prefer them as creditors.

While the Pikeville National Bank suit was pending, George Pinson, Jr., filed his suit, similar in all respects to that of the Pikeville National Bank, in which he sought judgment in the sum of $1,000 due him from J. E. Polley. The other relief he asked was exactly like that asked by the Pikeville National Bank in its suit. About the same time, the National Audit Company filed a like suit, seeking a similar judgment in the aggregate sum of $1,001.03. All of these suits were consolidated under the style of the Pikeville National Bank v. May and others. The defenses to the Pinson and National Audit Company suits were the same as to the Pikeville National Bank suit. Judge Childers was made a party defendant to the National Audit Company suit. J. E. Polley made no defense to any of the suits. On final submission of the consolidated cases, the court dismissed the petitions of the Pikeville National Bank, Pinson and the National Audit Company in so far as they sought any relief against the May children, Judge Childers, the First National Bank, J. B. Polley and the Day and Night Bank, and from this part of the judgment the Pikeville National Bank has appealed. The judgment also held that W. R. May had accepted the trust created by the Polley deed to him, that there had come into his hands sufficient funds not only

to make the payments of Polley's debts which he had, but also to satisfy the claims of the Pikeville National Bank, the National Audit Company and George Pinson, Jr., that he had dissipated such funds by turning them over to J. E. Polley, by reason of all of which the court gave these three claimants personal judgment for their respective claims against both J. E. Polley and W. R. May. From this part of the judgment W. R. May appeals. .

He first insists that it was error to hold that he had accepted the trust created by the deed of Polley to him. We are convinced that the chancellor committed no error in so holding. The evidence is convincing that May went with his son-in-law to the office of Hon. E. D. Stephenson for the purpose of having this deed of trust prepared and executed; that from that time on he regarded himself as a party to that deed; that he did not join in the Childers deed not because he had not thought it was necessary, but because he was then told by Judge Childers through his son, Ollie May, that it was unnecessary. The evidence further shows that May providentially appears on the scene just at the right moment when the Childers deed is executed, that he takes possession of the consideration for that deed, which he uses to pay certain obligations of his son-in-law, on one of which he is surety and the others of which are due his children. It is he who cashes the check, indorses and discounts the Childers note. It is in his name that the proceeds are credited. The conclusion is inescapable that May, by his acts, demonstrated that he accepted the trust created by the Polley deed to him, but tried to use the trust power for the benefit of himself and family instead of for all the creditors of J. E. Polley, as he should have done. The judgment then, in so far as it holds that W. R. May accepted the trust in question, must be affirmed.

No creditor of J. E. Polley is attacking the conveyance to Judge Childers, nor has any such creditor appealed from the judgment dismissing Judge Childers from this litigation. It is true May made him a party appellee in his appeal, but he has asked no relief in this court against Judge Childers. All seem to regard the sale to Judge Childers as very advantageous, and in such a state of the record, the judgment as to him must also be affirmed. As J. E. Polley made no defense to these actions and has taken no appeal from the judgment, as to him, it is correct and will not be disturbed. .

However, the rest of the judgment must be reversed. May can only be charged in this litigation with the assets of J. E. Polley which came into his hands. These are the $5,000 check and the $3,965.83 note. So far as this record shows, he never acquired dominion over the Bowles judgment. That judgment was either assigned to J. B. Polley or impounded under the attachment of the Pikeville National Bank. Which is true is immaterial to the decision in this case as we shall presently see. In so far as May paid the First National Bank and his children what they would have received on a *pro rata* distribution of such assets among all the creditors of J. E. Polley, none of such creditors may complain. Therefore all that May is now responsible for is the $3,000 he improperly turned over to J. E. Polley and the excess over a correct *pro rata* distribution he paid the First National Bank and his children. This aggregate is insufficient to pay in full the claims of the Pikeville National Bank, George Pinson, Jr., and the National Audit Company, yet the judgment gave these claimants a personal judgment against May for their claims in full. To sustain such judgment we would have to charge May with more than he is legally chargeable, and it therefore follows that the judgment in this aspect is erroneous.

Further, the Pikeville National Bank. George Pinson, Jr., and the National Audit Company, under their pleadings and the proof in this case, were not entitled to exhaust May's liability in this case in the payment of their claims to the prejudice of the other creditors of J. E. Polley. All three of these claimants brought their respective suits, pursuant to section 1910, et seq., of the statutes, to have certain alleged preferential payments set aside, to have these payments held to inure to the benefit of all the creditors of J. E. Polley, and to have his estate equitably distributed among all of his creditors, as these sections of the statutes prescribe.

These claimants indisputably established the payments made to the First National Bank and to the May children as preferential, within the meaning of the statutes *supra*, and likewise the assignment of the Bowles judgment to J. B. Polley, if it was assigned before the attachment of the Pikeville National Bank had impounded it. The record affirmatively shows that J. E. Polley was when this litigation started, and, so far as the record discloses, still is indebted to the Day and Night Bank of

Pikeville; and that he is further indebted to various creditors, whose names are not disclosed, in the sum of six or seven thousand dollars represented by notes on which May is indorser. The Pikeville National Bank insists that as to these notes, since May presented no claim in this litigation, they should not be considered. The answer to this is, of course, that these notes are not due to May, at least until he has paid them, and the holders of such notes cannot be prejudiced by May's failure to present such claims in this litigation. The statutes, under which these suits are prosecuted, require that the assets of the insolvent debtor be turned over to the receiver of the court and distributed among the creditors *pro rata* or according to their legal priorities.

Even the attachment of the Bowles judgment, if it has precedence over the assignment to J. B. Polley, must be handled in the same fashion. See section 1913 of the statutes. It is plain, therefore, that under the pleadings and proof in this case, the court erred in adjudging the Pikeville National Bank, George Pinson, Jr., and the National Audit Company payment of their claims in full to the prejudice of the other creditors of J. E. Polley.

On the showing made by this record, the court should have set aside as preferential the payments made to the First National Bank and the May children, and, as section 1913 of the statutes provides, should have required them to pay over the same to the receiver of the court, or to give bond to pay such sums above their *pro rata* of the estate. See Union Trust & Savings Co. of Maysville v. Taylor, 142 Ky. 183, 134 S. W. 196. He should have required the Bowles Judgment to be paid to the receiver of the court, as the assignment to J. B. Polley, if it took precedence over the attachment, was preferential, and, if the attachment took precedence over it, it inured to the benefit of all the creditors; and he should have charged May with the $3,000 he wrongfully paid over to J. E. Polley and with any excess of the payments he made to the First National Bank and the May children over their *pro rata* share in the final distribution in this case, in the event the court is unable to secure from them the repayment of such preferential payments made to them or the repayment of such excess. The court should then have proceeded in the administration of this case by referring it to the master commissioner for the purpose of advertising for creditors, the reception and proof of claim, and,

in short, taking the other steps necessary to settle this estate according to the statutes governing such estates. The judgment, then, except so far as it is affirmed herein, is reversed, with instructions to proceed in conformity with this opinion.