**BOMANZI OF LEXINGTON, INC.,**
**Appellant,**

v.

**Ann C. TAFEL, Appellee.**

Court of Appeals of Kentucky.

March 24, 1967.

Rehearing Denied June 30, 1967.

William E. Sloan, Wylie & Sloan, Lexington, for appellant.

William D. Grubbs, Woodward, Hobson & Fulton, Louisville, Herbert D. Sledd, Brown, Sledd & McCann, Lexington, for appellee.

STEINFELD, Judge.

Ann Tafel, the appellee, sued Bomanzi, Inc. and Bomanzi of Lexington, Inc. to recover money due on a promissory note which was evidence of a debt of Bomanzi, Inc., to Ann. The trial court entered judgment against both defendants for the total amount for which she sued. Only Bomanzi of Lexington, Inc., has appealed.

Bomanzi, Inc., was insolvent and was indebted to many creditors including stockholders, all but one of whom held promis-

sory notes. These are referred to as debentures. John Tafel, husband of Ann, was the one who held no note. The note on which Ann sued was issued to her at the same time as those to the stockholders. One John Marlowe was a large creditor of Bomanzi, Inc. On June 3, 1963, he offered to invest a substantial sum of money in a new corporation if Bomanzi, Inc., would convey all of its assets to the new corporation. On behalf of Bomanzi, Inc., the directors agreed on the condition that the new corporation assume and agree to pay all of the creditors of Bomanzi, Inc., excepting the indebtedness represented by the notes held by stockholders and the note held by Ann. All stockholders agreed to surrender their notes. Ann was not a party to this agreement and her husband had no power to agree for her. On June 7, 1963, Ann was requested to surrender her note but instantly refused. Pursuant to KRS 271.415, on June 24, 1963, the Board of Directors of Bomanzi, Inc., resolved to make the transfer. Bomanzi of Lexington, Inc., was formed and on July 20, 1963, the entire stock of merchandise, fixtures and equipment of Bomanzi, Inc., were conveyed to it by a bill of sale. John Marlowe made the investment as he agreed. Advertisement of the transfer was inserted in the Lexington Herald Leader on July 28, August 1, August 4 and August 11, 1963. On July 9, 1963, Ann learned of this transaction and on August 1, 1963, through her attorney, she sent a written protest to Bomanzi of Lexington, Inc. She filed this action on September 25, 1963.

She demanded judgment against Bomanzi, Inc., for the amount of the note which it had promised to pay, together with interest thereon. She alleged that Bomanzi of Lexington, Inc., received a fraudulent conveyance from Bomanzi, Inc., in violation of KRS 378.010; that the transfer of assets to it was a preference in violation of KRS 378.060; and that there was a Bulk Sale without compliance with the provisions of KRS 355.6, a portion of the Uniform Commercial Code. She claims that each of the above theories entitled her to a judgment against Bomanzi of Lexington, Inc., for the amount of the note and the interest thereon until it is paid.

Bomanzi, Inc., did not answer. Bomanzi of Lexington, Inc., admitted the transfer occurred at a time when it knew the transferor was insolvent and unable to meet its liabilities. It attempts to justify the transaction because Bomanzi of Lexington, Inc., assumed all obligations of Bomanzi, Inc., except the debentures and neither Bomanzi, Inc., nor any of its stockholders received any consideration for the transfer except the satisfaction of not being "associated with or hav(ing) their names linked with a bankrupt or insolvent enterprise." It also claims that Ann was guilty of laches in not taking action at an earlier date.

Ann and Bomanzi of Lexington, Inc., each moved for summary judgment and filed in support of their respective motions various affidavits, letters and other writings. The trial court granted a summary judgment in favor of Ann against Bomanzi, Inc. and Bomanzi of Lexington, Inc., jointly and severally for the full amount of the balance of her note together with interest thereon from its date until paid.

Only Bomanzi of Lexington, Inc., appeals. It claims that the summary judgment was erroneous in "that the Appellee has been permitted * * * to recover * * * from the new corporation by a personal judgment against it, when in fact, had the other principals been willing to let the old corporation collapse into insolvency, the Appellee would have taken nothing." It argues that there was "no intent whatever to defraud Appellee, although it (the transfer of assets) was admittedly made without Appellee's affirmative consent."

Ann will prevail to the extent hereinafter decided, if sustained by any one of the three contentions which she asserts. She had the same legal right as any other creditor. Farmers Bank of Fountain Run

v. Hagan, 242 Ky. 535, 46 S.W.2d 1084. We have concluded that the transaction was a preference in violation of KRS 378.060; therefore, it is unnecessary for us to decide whether the transfer was a fraudulent conveyance in violation of KRS 378.010 or that there was no compliance with KRS 355.6 (a bulk sale). The amount of the recovery by Ann would be the same—her prorata share of the assets of Bomanzi, Inc. In construing KRS 378.010 it has so been held in Ely & Walker Dry Goods Co. v. Freedberg, 226 Ky. 713, 11 S.W.2d 964; and re: KRS 378.060 in Union Trust & Savings Co. of Maysville v. Taylor, 142 Ky. 183, 134 S.W. 196 and May v. Pikeville National Bank, 218 Ky. 575, 291 S.W. 768. With respect to bulk sales, prorata distribution among creditors, but subject to priority, if any, was required before the adoption of the Uniform Commercial Code. Ford et al. v. Consolidated Grocery Company, 229 Ky. 510, 17 S.W.2d 448. That policy was continued by KRS 355.6–106(3).

Except as it might defeat valid claims of creditors, it is conceded that the directors of Bomanzi, Inc., were authorized by KRS 271.415 to make "A voluntary sale * * * of all the assets of (the) corporation * * * upon such terms and conditions as it deems expedient, * * * ".

Ann relies on KRS 378.060 which says in part that "any sale * * * made by a debtor * * * in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion, in whole or in part, of others, shall operate as an assignment and transfer of all of the property of the debtor, and shall inure to the benefit of all of his creditors * * * ".

There are certain statutory exceptions which are not applicable here. Ann argues that a transfer made by an insolvent corporation is presumed to have been made with the intent to prefer if the transfer in fact results in a preference. She cites Greathouse v. Millard, Ky., 320 S.W.2d 630 in which we said at page 632:

"* * * it is generally held that a transfer made by an insolvent will be presumed to be made with such intent if in fact it does constitute a preference, and a man of ordinary prudence under like circumstances would know that the transaction would so operate. McKee v. Scobee, 80 Ky. 124, 128; Allen v. Dillingham's Assignee, 104 Ky. 801, 808, 47 S.W. 1076, 1078; Union Trust & Savings Co. of Maysville v. Taylor, et al., 142 Ky. 182, 134 S.W. 196."

There is no question whatsoever that the transfer resulted in preferring creditors to the exclusion of Ann who was a creditor of the same class. Without her consent the stockholders and directors of Bomanzi, Inc., had no authority to ignore its obligation to Ann. Stephens v. Allied Bldg. Credits, Inc., Ky., 265 S.W.2d 60.

Appellant argues that there must be actual intent to prefer. We find that since the result would be a preference, intent is apparent. In McKinney Deposit Bank v. Cyrus W. Scott Mfg. Co. (and consolidated cases) 207 Ky. 340, 269 S.W. 343 we said at page 344:

"But it is a well-settled rule that when a man is insolvent and executes a mortgage when he knows, or by ordinary care should know, his condition, he will be held to intend the necessary consequences of his act. The purpose of the statute is to secure equality between creditors. The thing it aims to accomplish is the prevention of the preference of one creditor over the others. If the statute was held to apply only where an actual intent to prefer one creditor to another appeared, its real purpose would be defeated; for its purpose is that there shall be no preference of some creditors to others by an insolvent."

We hold that the "sale" to Bomanzi of Lexington, Inc., was a transfer within the meaning of KRS 378.060. Ann was not guilty of laches. She protested promptly and this action was filed timely. KRS

378.070(1). National Roofing Materials Co. v. Smith, 165 Ky. 848, 178 S.W. 1125; Gwinn Bros. & Co. v. Peoples General Store, et al., 269 Ky. 813, 108 S.W.2d 1001.

■ Appellant states that "Relief to set aside the transfer or to consider the sale void was not sought in the complaint, * * *". The complaint is before us. After demanding judgment for $4,800.00 and interest from August 31, 1962, against Bomanzi, Inc., there is the further demand, "2. That the aforesaid transfer be declared void and inoperative as to the plaintiff and that the property transferred, or a sufficient amount thereof, be subject to plaintiff's claim." Obviously the claim that Ann was not seeking to void the sale is without merit. Alternately, Ann demanded judgment against Bomanzi of Lexington, Inc., for $4,800.00 with interest at the rate of 6% per annum from August 31, 1962.

■ The trial court erred in entering judgment against the new corporation for the full amount of Ann's note together with interest thereon. The law stated in Evans v. Herbranson, 241 Iowa 268, 41 N.W.2d 113, 15 A.L.R.2d 925, 936, with respect to a bulk sale applies here:

> "The Bulk Sales Law makes no provision for a personal judgment against a buyer for a creditor's claim. Under section 555.4, 1946 Code, I.C.A., the buyer is to become a receiver and held accountable to the creditors for all the goods etc. and proceeds therefrom which come into his possession. The purpose of the Bulk Sales Law is to restore the status quo, so that the property may be subjected to the claims of creditors as though the sale had not been made. A creditor

is entitled to no more. The receiver must account to him for his pro rata share, but a creditor is not entitled to a personal judgment against the purchaser-receiver for the amount of his claim or any part thereof, if he makes a proper accounting."

The transferee is liable only to the extent of the value of the property received by it, and that liability is to the transferor's creditors prorata. Southwestern Drug Corporation v. McKesson & Robbins, 141 Tex. 284, 172 S.W.2d 485, 155 A.L.R. 1056; 24 Am.Jur. 364 section 261. Bomanzi of Lexington, Inc., failed to make proper accounting.

■ The remedies contemplate liquidation of the assets transferred so that all creditors, according to their respective priority, if any, will share ratably. Katz v. Scott, 229 Ky. 739, 17 S.W.2d 1024; Kessler v. Tapp, 297 Ky. 607, 180 S.W.2d 552. Under the facts herein, appellant assumed a role equivalent to that of a receiver or trustee. Bomanzi of Lexington, Inc., was obligated to account to those creditors of Bomanzi, Inc., who had not forgiven their claims. Kessler v. Tapp, supra. The court below shall determine the amount, if any, which Ann would have received through a liquidation of the assets of Bomanzi, Inc. and a distribution to all creditors except the stockholders who had waived their right to participate. For the amount she would have received a judgment shall be entered against Bomanzi of Lexington, Inc.

The judgment is affirmed in making an award to Ann C. Tafel. It is reversed as to the amount adjudged, for proceedings consistent with this opinion.

All concur.