CASE 67—PETITION EQUITY—JANUARY 7.

# Grimes, Assignee, &c., v. Grimes.

APPEAL FROM BOURBON CIRCUIT COURT.

1. ASSIGNMENTS BY OPERATION OF LAW.—When an insolvent debtor makes a transfer or payment to one of his creditors, with the knowledge that he is insolvent, the design to prefer will be presumed, and the act of the debtor will operate as an assignment for the benefit of all his creditors, under the statute, unless the circumstances accompanying the transaction show plainly that there was no motive or thought of giving an advantage or preference. In that event, the presumption will be repelled, and the transaction will not be within the statute.

   In this case the creditor to whom the debtor made a payment was a cousin and had been especially kind, which were the reasons assigned for giving him an advantage over other creditors. At the time the payment was made, the debtor knew that he was hopelessly insolvent. *Held*—That the circumstances not only do not rebut the presumption of an intent to prefer, but confirm it.

2. SAME—PRIORITY.—In the distribution of the assets of an insolvent debtor who has committed an act operating as an assignment under the statute, a debt due by the debtor as guardian is entitled to priority over debts due general creditors.

G. C. LOCKHART FOR APPELLANT.

In order that a payment shall operate as an assignment for all creditors, under the act of 1856, there must exist insolvency and an intention to prefer. (1 Metcalfe, 455; 2 Metcalfe, 336; 79 Ky., 176, Brooks, Waterfield & Co. v. Staton.)

TURNEY & LUCAS FOR APPELLEE.

A debtor being insolvent and knowing that fact makes a payment to a creditor, it is a preference under the act of 1856, and operates as an assignment of all the debtor's property. (78 Ky., 470, Taylor v. Taylor; 11 Bush, 359, Thompson v. Heffner's Ex'r.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

John B. Grimes, on June 2, 1879, conveyed all his estate, save that exempt by law, to a trustee for the

benefit of his creditors. He was then largely indebted, and, among others, to his brother, George W. Grimes, as his guardian. In February previous he had sold a lot of corn to one of his creditors, W. S. Grimes, in part payment of his debt; and on August 22, 1879, George W. Grimes, claiming that this was a preference within the act of 1856, and operated as an equitable transfer of all the property of John B. Grimes for the benefit of his creditors, instituted this action to have it so declared, and to set aside the deed of trust.

The trustee, acting under the deed of trust, subsequently brought a suit to settle the estate ; and the two actions were consolidated and heard together, resulting in the success of George W. Grimes. This, by virtue of section 7, article 2, chapter 44, of the General Statutes, secured to him priority of payment over the general creditors of what was due him from John B. Grimes as his guardian.

Section 1, article 2, chapter 44 of the General Statutes, and which is commonly known as the act of 1856, provides: "Every sale, mortgage, or assignment made by debtors, and every judgment suffered by any defendant, or any act or device done or resorted to by a debtor in contemplation of insolvency, and with the design to prefer one or more creditors to the exclusion in whole or in part of others, shall operate as an assignment and transfer of all the property and effects of such debtor, and shall inure to the benefit of all his creditors (except as hereinafter provided) in proportion to the amount of their respective demands, including those which are future and contingent; but nothing in this

article shall vitiate or affect any mortgage made in good faith to secure any debt or liability created simultaneously with such mortgage, if the same be lodged for record within thirty days after its execution."

The aim of this statute is to prevent insolvent debtors from making preferences in any mode among their creditors. Its terms, as originally passed in 1856, were enlarged by the Legislature in 1862, and made to embrace "every judgment which shall be suffered by any defendant, or any act or device which shall be done or resorted to by creditors in contemplation of insolvency;" and, as now found in our revision of the statutes, it embraces every preference in contemplation of insolvency, however made. In enacting it the legislative eye had in view equality. It should be so construed as to effectuate this intention, and yet so as not to cripple honest debtors and embarrass trade.

If the debtor makes the transfer or payment in contemplation of insolvency, and with the design to prefer the creditor, then the transaction is within the statute. To this end two things must concur, to-wit: It must be done "in contemplation of insolvency" and "with the design to prefer one or more creditors, to the exclusion in whole or in part of others." (Hampton, &c., v. Morris, &c., 2 Met., 336.)

This results, although the debtor may not then know that he is insolvent. If he contemplates becoming so, and makes the transfer or payment with the design to prefer, then the transaction is within the denunciation of the statute.

So, also, it will be presumed that one designs the

usual result of his act; and if the facts show that at the time of the transfer or payment to his creditor the debtor knew he was insolvent, then the design to prefer will be presumed and the transaction be within the statute. (Thompson, &c., v. Heffner's Executors, &c., 11 Bush, 353.) This is not an absolute, although, to give proper effect to the statute, it should be held to be a strong presumption.

It is urged that a debtor should be allowed to pay; that it must be shown that the act was done by the insolvent debtor with the design to prefer; that this intention cannot be inferred from the insolvency and sale or transfer; and that as the law requires the concurrence of two facts, that one of them should not be inferred by reason of the existence of the other.

We have already said that the presumption is not an absolute one. It will not and ought not to prevail if the circumstances of the transaction show that no preference was intended. The facts attending each case must be considered. To illustrate: Suppose A is liable both as principal and as surety. He has ample to pay his own debts; but if forced to pay all for which he is bound, or all be considered, then he is in fact insolvent. Under these circumstances, but not in contemplation of insolvency or with any idea of preferring a creditor, he makes a payment to one of them. Certainly the Legislature did not intend that this should be cause for [putting him into bankruptcy. If so, then it may be done although his assets may greatly exceed in value his own debts and those which it is reasonably certain he may have to pay; and men engaged in commerce and trade, who must necessarily *inter se* become sureties, would at all times be exposed to this hazard.

Again, we will suppose that A is bound both as principal and surety in a sum larger than his assets. He is nominally insolvent. He is, however, engaged in a prosperous, money-making business, and bids fair shortly to be worth more than his liabilities of every character. Under these circumstances, and not in contemplation of insolvency or with any intention to prefer a creditor, he makes a payment to him. Surely such a transaction would not be ground for his financial ruin. Such a rigid construction of the statute would not produce the end for which it was designed; but, upon the contrary, would cripple commerce, tie the hands of honest but embarrassed and struggling debtors, and bring ruin upon many who might otherwise avoid it. Neither the language or spirit of the act requires a construction so prolific of bad result.

The *intent* of the debtor furnishes the ground for equitable interference. It is the essence of the statute. The design to prefer will be inferred from a payment by an insolvent debtor; but the circumstances accompanying it may show plainly there was no motive or thought of giving an advantage or preference, and then the presumption is repelled.

In this instance, however, the debtor was hopelessly insolvent when the payment was made. This is not only proven, but admitted; and the circumstances attending the transaction not only do not rebut the presumption of an intent to prefer arising from the fact of payment and insolvency, but in our opinion confirm it. The debtor testifies in substance that he then knew he was insolvent; that Wm. S. Grimes was his cousin, and had been especially kind to him;

that he believed he would assist him in his troubles quicker than any one else, and that for these reasons he preferred to give him an advantage over his other creditors. This shows a clear case of preference; and, aside from the presumption we have alluded to, brings the transaction within the statute, and defeats the subsequent assignment, which, if valid, would give the infant no priority of payment.

Judgment affirmed.