**350**     KENTUCKY REPORTS.     [Vol. 111

Northern Bank of Ky. v. Farmers' Nat. Bank of Cynthiana, &c.

CASE 39—ACTIONS TO HAVE CERTAIN TRANSFERS OF PROPERTY DE-
CLARED TO OPERATE AS AN ASSIGNMENT FOR THE BENEFIT OF CRED-
ITORS—JUNE 18.

# Northern Bank of Ky. v. Farmers' Nat. Bank of Cynthiana, &c.

### APPEAL FROM BOURBON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND THE NORTHERN BANK OF KENTUCKY AP-
PEALS. AFFIRMED.

PREFERENCE OF CREDITORS—OPERATION AS ASSIGNMENT—JOINDER OF
CAUSES OF ACTION—EFFECT OF SUBSEQUENT PREFERENCES —DEPOSIT
IN BANK AS PREFERENCE OF BANK—RELEASE OF SURETY.

Held: 1. A petition by a creditor to have an act of preference com-
mitted by an insolvent debtor declared to operate as an assign-
ment for the benefit of creditors states but a single cause of
action, though other acts of preference subsequently committed
are also alleged, and therefore plaintiff can not be required to
make an election, it being proper, upon adjudging that the
first preference operated as an assignment, to further adjudge
that the creditors subsequently preferred shall surrender the
property alleged and proved to have been obtained by them.
2. Where a deposit in bank, made by an insolvent debtor, was applied
by the bank to the payment of a note it held against the de-
positor, in order to prevent the release of a surety in the note,
the making of the deposit was a preference within
the statute, though there may have been no intent to
prefer, as that was the natural result, and therefore,
in an action to have a prior act of preference de-
clared to operate as an assignment, the bank may be required
to surrender the money, the facts constituting the deposit an
act of preference being alleged and proved.
3. The payment applied to the note being adjudged to be within
the statute, the parties are placed where they were originally,
and therefore the surety is not released.

McMILLAN & TALBOT, ATTORNEYS FOR APPELLANT:

### SUMMARY. AUTHORITIES CITED, &c.

1. Except in cases of assignment for benefit of creditors generally,
under the Act of 1856, all property acquired from the debtor

.Vol. 111]      APRIL TERM, 1901.      351

Northern Bank of Ky. v. Farmers' Nat. Bank of Cynthiana, &c.

,by purchase, assignment or otherwise *after the institution of suit*, must be surrendered. Ky. Stats., latter portion of sec. 1913.

2. As to property acquired from the debtor *prior to the institution* of the suit, no ·recovery can be had unless it is (1) *alleged and* (2) *proved* that the transfer was made in contemplation of 'insolvency and with the design to prefer the transferee. Fuqua v. Ferrell, 80 Ky., 69.

3. The latter authority recognized and approved in Oliver & O'Brien v. Sutton, 19 Ky. Law Rep., 1368.

4. The bank has a lien upon the deposit account of its depositors to satisfy any indebtedness of the depositor to the bank. Morse on Banks and Banking (3d ed.), secs. 324, 325, 326, &c.; Masonic Savings Bank v. Bang's Admr., 8 Ky. Law Rep., 16; Mt. Sterling National Bank v. Green, 18 Ky. Law Rep., 178.

5. It was not only the right of the bank to apply Moore's deposit account to the satisfaction of his note, but it was the surety's right and consequently the bank's duty to have it so applied. Pursifull v. Pineville Banking Co., Assignee, 17 Ky. Law Rep., 38.

6. Jno. I. Moore being a regular depositor of the bank and having enough on deposit to satisfy his over-due note upon which Wm. Layson was surety, the bank having, as was its duty, cancelled the note, and this having been done prior to the institution of the suit under the Act of 1856, in due course of business and without any knowledge or information that an act of insolvency had been committed, the surety, Wm. Layson, was released' and the bank can not therefore be placed in *statu quo.*

7. "The junior equity combined with the legal title without notice of the senior equity, will be protected against the senior equity." Hewitt v. Sturdevant, 4 B. Mon., 464.

8. Where the assignee of a fund acquires the equitable title only and a creditor of the debtor attaches the debt in a suit against the debtor and prosecutes his claim to judgment without notice of the prior equity of the assignee, the attaching creditor will be protected against the prior equity, his junior equity being supported by the legal title. Garrott v. Jaffray & Co., 10 Bush, 417.

9. The creditors of Jno. I. Moore acquired a latent equity in his property by the act of insolvency of May 9, 1895. Without notice of this latent equity, the Northern Bank in due course of business acquired an equitable lien upon his deposit account in said bank and without notice and in due course of business appropriated the deposit to the payment of his note, thereby legally taking possession of and acquiring legal title to said fund. The bank's junior equity supported by the legal title ac-

352          KENTUCKY REPORTS.          [Vol. 111

Northern Bank of Ky. v. Farmers' Nat. Bank of Cynthiana, &c.

quired in a legal way, without notice and in good faith and in the regular course of business and before suit was filed, must prevail against prior latent equity of the creditors, as per above authorities.

10. Hence, even if there were no distinction drawn by the statutes and decisions between transfers after the institution of suit, and transfers before the institution of suit, there could be no recovery in this case (1) because the bank can not be placed in *statu quo*, and (2) because its junior equity coupled with legal title, is superior to the senior latent equity of creditors.

J. J. OSBORNE, ATTORNEY FOR APPELLEES. HARMON STITT, OF COUNSEL.

1     The question at issue on this appeal is the contention of counsel for appellant that the appropriation by the Northern Bank of the money received by Moore from Kahn, to the payment of the over-due note of Moore owing to the bank, is not within the provisions of the Act of 1856, relating to preferential conveyances for the reason that this transaction occurred after the act of preference, but before the bringing of the suit attacking the preferential act, and that the transaction by which the bank was enabled to appropriate the money to the payment of the note of Moore is not sufficiently, or successfully attacked by the action of the Farmers' National Bank.

2     By the making of the mortgage in May, 1895, the Northern Bank itself, being then a creditor of Moore, acquired the right, which all creditors had, immediately or within six months thereafter, to attack the making of the mortgage as an act of insolvency; in other words, the making of the mortgage operated in law as an assignment of all the property of Moore for the benefit of all his creditors, but because by a lucky chance, or by design the bank on September 4, 1895, obtained possession of enough money of Moore to discharge to it the note of Moore, it simply keeps the money, repudiates rights under the law acquired by Moore's assignment and proceeds to make itself whole.   The Northern Bank kept this money and credited it on Moore's note for the simple reason that it knew Moore was insolvent.

3     The chancellor below has found as a fact that the deposit by Moore of the money in the Northern Bank to his credit, and the credit by the bank of that money to itself on Moore's note was a preference following the earlier preference by mortgage to Layson, &c., and having made this finding of fact, this court will not disturb that finding.

.Vol. 111]    APRIL TERM, 1901.    353

Northern Bank of Ky. v. Farmers' Nat. Bank of Cynthiana, &c.

AUTHÔRITIES CITED.

Olive & O'Bryan v. Sutton, &c., 19 Ky. Law Rep., 1368; Baker, &c., v. Kinnaird, 94 Ky., 5.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

On May 9, 1895, John I. Moore executed a mortgage to William M. Layson and others to secure them as creditors in certain debts owing by him. On August 29, 1895, he sold eighty-five head of cattle, which he owned at the time the mortgage was executed, and received therefor a check for $4,557.75. This check he deposited with the Northern Bank of Kentucky, and was credited by the amount on its books. It held a note against him for $4,534.78, which had been due for three months, and on September 4, 1895, it charged the note to his account. After this he checked on the account, but the bank refused to pay. The reason for charging the note to the account was that the surety in the note denied signing it, and the bank was advised that it released the surety if it did not apply the deposit to the payment of the note. See Pursifull v. Banking Co., 97 Ky., 154 (17 R. 38) (30 S. W., 203). After all this, on September 21, 1895, Sallie E. Barnett filed her petition in equity against Moore and the holders of the mortgage executed on May 9th, alleging that she was a creditor of Moore, that he was insolvent, and that the mortgage was executed by him in contemplation of insolvency, with the intent to prefer the mortgagees to the exclusion of his other creditors. No mention was made in this petition of the transaction with the Northern Bank of Kentucky; but on November 7, 1895, the Farmers' National Bank of Cynthiana filed its petition attacking in the first paragraph the mortgage of May 9th, and in the second paragraph

made the following allegations: "The plaintiff further
says that on the said 9th day of May, 1895, the defendant,
John I. Moore, owned a large lot of feeding cattle, or fat
cattle, the number or value of which is to the plaintiff un-
known; and that on the —— day of August or September,
1895, he sold eighty-one (81) head of cattle to one Moses
Kahn for $5,811.75, and received the purchase price there-
for, and the same was deposited to his credit with the
defendant, the Northern Bank of Kentucky, and the said
defendant, the Northern Bank of Kentucky, is now seek-
ing to appropriate said sum of money to the satisfaction
of the debt due to it by the defendant, John I. Moore,
before the 9th day of May, 1895; and plaintiff says that
the money so deposited, being the avails of the cattle
owned by John I. Moore on the 9th day of May, 1895,
passed by his act of preference committed on said day,
as hereinbefore stated, to and for the benefit of all his
creditors, and was an act done, suffered, or permitted by
the said defendant, John I. Moore, in contemplation of
insolvency, and with the design to prefer said bank to the
exclusion, in whole or in part, of his other creditors." The
cases were consolidated, and on final submission, the
court, at the November term, 1896, adjudged the mort-
gage an act of insolvency, and referred the cases to the
commissioner to report what property Moore owned at
the time the mortgage was executed, and what had be-
come of it and the proceeds. The commissioner, on June
3, 1897, reported the sale of the cattle, the deposit of the
money with the bank, and its application by the bank to
the payment of the note, as above stated. The bank at
this time had filed no answer to the petition, but only a
demurrer. After this its demurrer was overruled. Also
a motion by it that the plaintiff be required to elect

whether it would attempt to proceed against the Northern Bank to refund the money as being the proceeds of property owned by Moore at the time of his committing the act of insolvency, or rely upon the payment of the note as having been made by Moore in contemplation of insolvency, with the design to prefer the bank to the exclusion of his other creditors. In overruling this motion the court placed its decision on the ground that only one cause of action was set up; to-wit, the refunding of the money deposited by Moore as being the proceeds of property owned by him at the time of his committing the alleged act of insolvency. At the December term of 1897 the bank filed answer, in which it denied that the transaction was done in contemplation of insolvency by Moore, or to prefer it to his other creditors, but alleged that it was in good faith, and before any suit had been filed attacking the mortgage; that it had no notice that Moore was insolvent, or had committed an act of insolvency; and that the deposit was applied to the payment of the note on the advice of counsel, the surety disclaiming having signed the note. The case having been submitted at the March term, 1899, the court ordered the Northern Bank to pay to its receiver the amount of the deposit. From this judgment the bank appeals.

No reply was filed to the answer of the bank, but its allegations were in the nature of an affirmative denial, and we do not think a reply was necessary. It is earnestly insisted for the bank that, the transaction with it having occurred before any suit was filed attacking the mortgage, under section 1913, Kentucky Statutes, the court was without power to compel it to surrender the money to the receiver, and, to sustain this conclusion, Fuqua v. Fer-

rell, 80 Ky., 69 (3 R. 571) is relied on. Substantially the same question was made in Baker v. Kinnaird, 94 Ky., 5 (14 R. 695) 21 S. W., 237, where the debtor had made a number of transfers after the original act of insolvency, and it was held that "all the transfers of real and personal estate and collections made from and after that date by reason of the transfers and in payment of these debts passed to the creditors." The court thus reasoned the matter: "We are aware of the cases cited of Southworth v. Casey, 78 Ky., 395, and Fuqua v. Ferrell, 80 Ky., 69. In the first case the debtor, before suit was brought, sold some of the property to a *bona fide* purchaser, and obtained the money; and this court held that parties who purchased in good faith could not be compelled to surrender the property, because the statute provides that the court shall compel every person, acquiring by purchase, assignment or otherwise, property or effects of the debtor after the suit contemplated by that act shall be instituted, to surrender the same to the receiver. The question decided in that case does not arise here, for the reason that none of the estate of the debtor was purchased in good faith, but all the collaterals and mortgages taken to secure antecedent debts by an insolvent debtor with the design to prefer, and the sums of money collected by the creditor from the collaterals, is the money the chancellor requires refunded. The debtor has paid no money, as in the case of Fuqua v. Ferrell, but the creditor has collected it from the pledged estate, which pledge was an act of insolvency within the statute. In other words, there are no *bona fide* purchasers in this case, and, while there are *bona fide* creditors, they have brought themselves within the statute by obtaining the preferences already referred to. *Bona fide* creditors are not protected unless the debt and

Vol. 111]          APRIL TERM, 1901.          357

Northern Bank of Ky. v. Farmers' Nat. Bank of Cynthiana, &c.

mortgage are simultaneously created and executed before
suit brought, without knowledge of the contemplated insol-
vency and the design to prefer." In the subsequent case of Ol-
iver v. Sutton, 1,02 Ky., 334; (19 R. 1368) 43 S. W., 475, where
the same question was made again, the court said, after
quoting the sections of the statute: "We see, therefore,
that the proceeding contemplated by the act is one to
secure the possession by the court of all the property
owned by the debtor at the time the act was committed
which operated as an assignment, and to administer the
estate of the insolvent in the same manner as the estate
of a deceased person is administered. To secure the pos-
session, it was essential to make parties to the proceeding,
all persons to whom transfers had been made giving pref-
erences, and it was essential to make complete averments
as to all such transfers which were made prior to the be-
ginning of the suit; for otherwise, as distinctly held in
Fuqua v. Ferrell, 80 Ky., 69, the surrender of the property
so transferred could not be compelled. Holding this view
as to the scope and meaning of the act, we are of opinion
that all transferees, within the statutory period of limita-
tion, were properly parties defendant to the cross petition
of appellants, and were, moreover, necessary parties, if
it were intended to subject the property transferred to
them to the proceeds of administration as a part of the
insolvent's estate. The object authorized by the statute
to be accomplished is the declaration and administration
of a trust embracing all the property of the insolvent
debtor for the benefit of all his creditors. The limitation
sought to be applied by the appellees, the Western Bank
and others, would result in the declaration and adminis-
tration of a trust embracing only such property as was
transferred to a single creditor, together with property

.358      KENTUCKY REPORTS.      [Vol. 111

Northern Bank of Ky. v. Farmers' Nat. Bank of Cynthiana, &c.

transferred subsequent to the bringing of the suit. Taking the whole statute together, it is impossible to believe that this could have been the legislative intent. As a matter of course, each of the preferences alleged can not be adjudged to operate as an assignment, but the earliest preference established within the period of limitation should be so adjudged, and the subsequent preferential transferees be adjudged to surrender the property obtained by them." The circuit court seems to have followed these cases. The proof warrants the following conclusion: Moore was insolvent at the time the deposit was made and when the note was charged to his account. The bank knew this, or had reason to believe it. The deposit was made in the usual course of business. Moore did not have in mind, at the time, the giving of a preference to the bank. He intended checking the money out in his business. But the preference of the bank was the logical and natural result of his depositing the money there. The bank did not intend to charge the note to the account when the deposit was made. This was suggested by its learning from the surety that he claimed not to have signed the note, and by the advice of its counsel that, if it allowed the money withdrawn, it would release the surety. It is insisted for the bank that, the deposit having been made in the usual course of business, without actual intention on the part of Moore to give it a preference over his other creditors, and the amount having been applied to the payment of the note by the bank in good faith, as it had to do, or release the surety, the bank should not now be made to give up the money, as by the transaction the surety has been released, and it can not be placed in *statu quo*. No suit had been brought against Moore, at the time of the transaction, attacking the

mortgage made in May as a preferential act, and the trans-
action with the bank can not be assailed unless it was it-
self a preferential act under the statute.    To give it this
character, the proof as to the design to prefer the bank to
his other creditors must be established by the proof with-
out regard to the prior transaction in which the mortgage
was made.    It has been held that, where a debtor makes
a transfer or payment to one of his creditors with the
knowledge that he is insolvent, the design to prefer will be
presumed, unless the accompanying circumstances show
plainly that there was no such intention.    This rests upon
the presumption that one designs the usual result of his
act.    But the presumption is not absolute.    The intent
of the debtor is the essence of the statute.    Still the pur-
pose of the statute would be defeated if it were denied
application simply because the debtor did not in fact con-
template the necessary effect of his act.    If Moore had
handed the check for $4,557.75 to the bank, and directed
the proceeds collected and credited on this note, undoubted-
ly the transaction would have been within the statute.    He
can not be allowed to do by indirection the same thing
without the same result.    His act not only put it in the
power of the bank, but imposed on it the necessity of ap-
plying the proceeds of the check to the payment of the
note; for, if it had failed to do this, it would have released
the surety in the note, and, after paying out the money, it
would have had nothing to look to for its debt but the
personal obligation of Moore, who was insolvent.    The
aim of the statute is to secure equality between creditors,
and its just purpose can not be defeated in such a way.
This is the equity of the case.    Grimes v. Grimes, 86 Ky.,
511; (9 R. 694) 6 S. W., 333.    In McMakin v. Stratton, 82
Ky., 226 (8 R. 766) renewal notes had been ac-

cepted, which were forgeries as to the surety. It was held that the surrender of the old notes and the acceptance of the new ones by the creditor did not release the surety on the original note. In Struss v. Bank, 89 Ky., 61 (11 R. 333); 11 S. W., 769; 12 S. W., 266, the creditor was induced by a fraudulent representation to cancel the note upon which the surety was bound. It was held that neither the surety nor any one else should be allowed to assert rights or claim benefits derived through the fraud of others, and a number of other cases are cited to sustain this conclusion. The statute against preferences by insolvent debtors applies, however innocently the creditor may act in the transaction. Nock's Ex'r v. Goodloe, 5 Ky. Law Rep., 247. The principle announced in the foregoing cases should, therefore, apply where 'a note is discharged by a payment which is afterwards adjudged within the statute. Failing debtors are often especially solicitous to protect their sureties. When money is tendered to the creditor, or he has the means of retaining it in his hands, he is bound to accept it or retain it, in order to hold the surety. The transaction is good if not attacked within six months, and when attacked and a payment is adjudged within the statutes as, as by the terms of the statute, such transfers are subject to the control of courts of equity. (Ky. St., sec. 1911.) The court must, upon equitable principles, place the parties where they were originally. We are, therefore, of opinion that on the merits the judgment complained of is right. If there was any defect in the petition, it was cured by the answer, proof, and judgment, and on the whole case we see no error to the prejudice of appellant's substantial rights. The judgment is affirmed.