**W. W. GREATHOUSE, Appellant,**

**v.**

**W. P. MILLARD et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 12, 1958.

Rehearing Denied Feb. 27, 1959.

Weldon Shouse, Lexington, for appellant.

Pat Rankin, Stanford, Henry Clay Cox, Lancaster, Joe Davis, Danville, W. Earl Dean, Harrodsburg, Wesley Gilmer, Jr., Danville, for appellees.

CLAY, Commissioner.

This is a receivership proceeding in which it was adjudged that appellant obtained approximately $11,000 as a preference from an insolvent debtor and that said sum must be returned for the benefit of all the insolvent's creditors as provided by KRS 378.060.

Appellant for some time had financed the purchase of new automobiles under an arrangement known as "floor planning" for the Thompson-Gordon Motors Company. Under this arrangement appellant would pay for the new cars, the Motors Company would execute demand notes covering the purchase prices, and would execute chattel mortgages on the automobiles to secure the notes. Such mortgages authorized the Motors Company to sell the automobiles, and required the company to pay off the portion of the debt represented by the particular automobile on or before each sale.

In February 1956 appellant had financed the purchase of five new automobiles for the Motors Company. These cars were sold on February 16. Five checks (aggregating the $11,000) were drawn on a bank where the Motors Company did business, and the checks were received by appellant February 20. Upon receipt of the checks, appellant telephoned the bank and was advised there were not sufficient funds on deposit to cover the checks. However, the cashier advised that they would no doubt be paid upon presentment.

On February 23 appellant went to the bank and the checks were paid. Between February 20 and 23 the Motors Company had borrowed $25,000 from this same bank, executing a mortgage on all of its property. This loan was negotiated to pay off certain obligations to the bank, as well as the debt to appellant.

It is stipulated that the Motors Company was insolvent on February 23.

The principal question in the case is whether or not this payment was made to appellant by the Motors Company "in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion, in whole or in part, of others, * * *." KRS 378.060. Appellant contends that there is no evidence in the

record to indicate the Motors Company contemplated insolvency. This is an unusual argument in view of the fact that the Company was actually insolvent when appellant received payment on the checks. On this and other points appellant would have us look at conditions existing when the checks were issued; whereas, the crux of the case involves the conditions existing when payment was made. Certainly the developments between February 16 and February 23, if not before that time, constituted ample evidence to justify the trial court's finding that the Motors Company contemplated insolvency. CR 52.01.

■ Although appellant states several reasons why there is no showing that the Motors Company intended to prefer him, it is generally held that a transfer made by an insolvent will be presumed to be made with such intent if in fact it does constitute a preference, and a man of ordinary prudence under like circumstances would know that the transaction would so operate. McKee v. Scobee, 80 Ky. 124, 128; Allen v. Dillingham's Assignee, 104 Ky. 801, 808, 47 S.W. 1076, 1078; Union Trust and Savings Co. of Maysville v. Taylor, et al., 142 Ky. 182, 134 S.W. 196.

■ In view of the fact that the Company was insolvent, that this payment was made under unusual circumstances, and that the Motors Company mortgaged all of its property as security for the loan, we think there was ample evidence in the record that the transaction was designed to prefer appellant as a creditor. The trial court so found on the basis of substantial evidence. CR 52.01.

■ It is argued that while this transaction may have constituted a preference, if payment had been made to an unsecured creditor, it may not be so characterized because appellant was a secured creditor, and the payment to him simply constituted a substitution of cash for physical assets (i. e., the five automobiles) upon which he had a lien, and therefore the debtor's estate was not depleted to the prejudice of other creditors. The difficulty with this position is that while appellant had at one time been a secured creditor, he was not such when payment was made to him. It is evident, and not disputed by appellant, that by virtue of the terms of the mortgages he lost his security when the cars were sold on February 16. (If he had not lost his lien on the automobiles, he could have subjected that property to the payment of his claim and he would not need to insist on the payment in controversy.) Appellant must be classified as an unsecured creditor when he received payment from the bank, and this payment clearly did deplete the liquid assets of the Motors Company.

■ Appellant next contends that the money he received was not the money of the Motors Company but constituted a payment as a volunteer by the surety on the Motors Company's note for $25,000. This rather intricate theory is based upon the fact that one W. L. Gordon (the father of one of the partners in the Motors Company), while apparently surety on the note, was in fact the principal to whom the bank would look for payment. The argument seems to be that W. L. Gordon, being interested in saving his son's business, actually was the party who paid the $11,-000 to appellant. We are unable to construe the transaction, by virtue of which appellant was paid, to be a voluntary payment by W. L. Gordon. He did not put up any money, but simply loaned his credit to the Motors Company. The fact that he may eventually be required to pay the entire $25,000 note still does not extinguish it as a debt of the Motors Company or alter the fact that the $11,000 paid to appellant was a payment by the Motors Company.

■ Appellant next contends that the creditor who filed this suit was guilty of misconduct, and suggests that such party

will benefit from the suit in an inequitable manner. That problem is not properly in issue before us. The only question presented is whether or not appellant must return to the estate of the insolvent the preferential payment which he received. The later disposition of that money may depend upon equities or other circumstances not under consideration. The question has no relevance to the issue of appellant's liability.

■ Appellant further contends that two of the creditors who are active participants in this litigation have no right to participate as general creditors because they have not exhausted their security. Appellant insists they must attempt to collect their claims from sureties on their various notes before they can be classed as general creditors. It is apparent from the court's judgment that this question has not been passed upon and is not properly raised at this time. There is also serious doubt that appellant's position is sound.

See Gaines v. Hill, 147 Ky. 445, 447, 144 S.W. 92, 39 L.R.A.,N.S., 999.

■ Appellant makes the claim that some sort of estoppel should apply to the acts of W. L. Gordon, whereby appellant should be permitted to keep the payment which Gordon was instrumental in securing. We cannot find that appellant changed its position from a legal standpoint in reliance upon the acts of Gordon. However, we are at a loss to understand how the acts of Gordon could destroy the rights of creditors. Gordon was not even a creditor of the Motors Company. He neither acted for the Motors Company nor for the creditors. Certainly his acts could not estop the latter.

The judgment of the trial court (incorporating an opinion and findings) carefully analyzed and admirably disposed of the issues presented in this controversy, and we find no error.

The judgment is affirmed.