In re REXPLORE DRILLING,
INC., Debtor.

J. Hunt PERKINS, Trustee,
Plaintiff–Appellee,

v.

PETRO SUPPLY COMPANY, INC.,
Defendant–Appellant.

No. 91–6145.

United States Court of Appeals,
Sixth Circuit.

Argued April 7, 1992.

Decided Aug. 5, 1992.

Barry M. Miller, Taft McKinstry (argued & briefed), Fowler, Measle & Bell, Lexington, Ky., for plaintiff-appellee.

R. Allen Wilson (argued & briefed), Wilson, Johnson & Presser, Owensboro, Ky., for defendant-appellant.

Before: MERRITT, Chief Judge, NORRIS, Circuit Judge, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant Petro Supply Company appeals the district court's order in favor of plaintiff J. Hunt Perkins, the trustee in bankruptcy, affirming the bankruptcy court's decision finding that an agreed state court judgment was voidable by the bankruptcy trustee as a preferential transfer.

## I.

Petro Supply Company is a Kentucky corporation engaged in the business of selling equipment and supplies to oil and gas producers. During 1984 and 1985 Petro sold over $52,000.00 worth of oil and gas equipment and supplies to the debtor, Rexplore Drilling, Inc. The debtor, formerly known as Koil Drilling, Inc., operated oil and gas leases for its companion corporation, Rexplore, Inc. Rexplore, Inc. was engaged in the business of selling interests in the leases to raise money for its operating company, Rexplore Drilling, Inc.

Most of the oil and gas leases in Grayson County, Kentucky had been purchased by Rexplore, Inc. from Compass Petroleum Industries, Inc., by acquiring the common stock of Compass from its parent, Pilgrim Coal Corporation. The debtor, Rexplore Drilling, Inc., was the guarantor of a $550,000 promissory note and mortgage given to Pilgrim for the purchase of the leases. Rexplore, Inc. was prohibited from allowing any third-party liens to be placed on the properties until the note was paid off. If any such liens were placed on the property, Pilgrim was given the right to foreclose. With this background in mind, we turn to the facts giving rise to the instant dispute.

By the spring of 1985, Rexplore Drilling began to suffer severe financial difficulties. During this time, Rexplore Drilling was unable to pay its bills as they became due. Although Rexplore Drilling continued to meet its payroll, it ceased to remit employee withholding payments to the IRS. The company's computers as well as some field equipment were repossessed by creditors. The company's bank accounts were subjected to numerous garnishments, and it responded by moving its funds to accounts with different names. The company cut its office staff from a high of 39 workers in late 1984 to thirteen by October, 1985.

Because Rexplore Drilling was unable to pay its obligation to Petro, on May 16, 1985, Petro filed mechanic's and materialman's liens on leases in McLean, Ohio and Todd counties in Kentucky in the amount of $16,195.54. Petro filed a lawsuit in Daviess Circuit Court to enforce these liens on October 22, 1985. In addition, Petro filed a materialman's lien, in the amount of $52,141.04, in Grayson County, Kentucky on a lease held by Rexplore, Inc.'s subsidiary Compass Petroleum.

The Grayson lien created a problem for Rexplore, Inc. because its contract of sale with Pilgrim Coal, from which it purchased Compass, required it to keep the property free of all such encumbrances. Rexplore, Inc. defaulted on its contract of sale, and Pilgrim brought suit on March 4, 1985 seeking foreclosure on the mortgage.

In an attempt to settle this foreclosure, Pilgrim, Compass, Rexplore, Inc., and Rexplore Drilling entered into negotiations concerning the Grayson leases. On October 30, 1985, the parties entered into a "Second Settlement Agreement" with the lienholders, including Petro, providing for monthly payments of $5,000.00 until the lien against Compass' interest was satisfied in full. Once the debt was fully paid, Petro was to release its lien against Compass. As part of this settlement, Petro agreed not to proceed against any of the other liens on leases in McLean, Ohio, Todd or Grayson counties and executed a release of lien to this effect. However, the parties agreed that if Rexplore Drilling missed a payment, the entire amount of the obligation became due immediately. An Agreed Judgment was entered in the Da-

viess Circuit Court on November 4, 1985, incorporating the entirety of the Second Settlement Agreement. It was stipulated that this judgment was not secured.

On November 22, 1985 Rexplore Drilling defaulted on the first payment due under the terms of the Agreed Judgment. On December 9, 1985 Petro sought a garnishment order from the Daviess Circuit Court in order to attach funds held by Ashland Oil, Inc. which were owed to Rexplore Drilling. Ashland paid the sum of $21,070.05 to Petro in January, 1986. A subsequent garnishment order was again issued on February 3, 1986, which Ashland did not pay, although it held additional funds belonging to Rexplore.

On March 12, 1986 Rexplore Drilling filed for bankruptcy protection under Chapter 11. The bankruptcy court appointed J. Hunt Perkins as trustee on August 27, 1986. The trustee investigated those leases operated by Rexplore Drilling in which title was held by Ashland Oil. As a result, it was determined that Ashland Oil held an additional $107,540.05 which was to be credited to Rexplore Drilling.

Rexplore Drilling filed schedules along with its Chapter 11 petition listing total liabilities of $3,001,246.30 and total valued assets of $682,652.60. Of the listed assets, $636,223.10 in contingent claims were listed. The schedules also listed, at undetermined values, interests in oil leases and in limited partnerships. These leases were subject to mechanic's liens, EPA compliance obligations and other expenses. Therefore, it was difficult to approximate their value.

When preparing its statement of financial affairs and schedules, the debtor failed to list as a debt a $1.8 million mortgage to the Indemnity Insurance Company of North America ("IINA"). Mr. Charles Boarman, Rexplore Drilling's counsel, did not list this mortgage as a liability because he considered the loan "improvidently granted."

On March 21, 1988, the trustee commenced this adversary proceeding against Petro alleging that the signing and entry of the Agreed Judgment, the payment of $21,070.94 by Ashland Oil in answer to the garnishment, and the subsequent issue of a second order of garnishment on the Agreed Judgment, all constituted preferences under Kentucky Revised Statutes §§ 378.060, 378.070. On May 16, 1991 the bankruptcy court found that the Agreed Judgment and the garnishment orders issued pursuant thereto were avoidable as preferences, and granted judgment to the trustee in the amount of $21,070.94. The bankruptcy court reasoned:

> The agreed judgment against the debtor in favor of Petro constitutes a judgment suffered by the debtor in contemplation of insolvency with a design to prefer Petro over other creditors. The terms of the agreed judgment were consistent with the terms of the Second Settlement Agreement, the objective of which was to keep the debtor afloat by making monthly payments to certain key creditors, including Petro. The garnishments issued on the judgment resulted in transfers of property of the debtor to Petro, which transfers are avoidable by the trustee for the benefit of creditors generally.

Joint Appendix at 42–43. The district court affirmed the Bankruptcy Court's decision and Petro filed a timely notice of appeal.

## II.

Petro first argues that the bankruptcy court erred in applying K.R.S. § 378.060 to the facts of this case, because that statute requires a finding that the debtor subjectively intended to prefer one creditor over another, and since there was no evidence of intent to prefer, the Agreed Judgment is not avoidable by the bankruptcy trustee. The trustee in bankruptcy argues, however, that the debtor's subjective belief is not determinative, but that a payment to a creditor violates the statute if a reasonable debtor, in light of all the facts and circumstances, should have known that the transfer would have had a preferential effect. Both courts below interpreted the statute so as not to require a subjective belief that a transfer was preferential; instead, a transfer would violate the statute if a debtor has "reason to know that it is insolvent

when it makes the transfer ... then the design to prefer is presumed." Joint Appendix at 14. .

### A.

■ The bankruptcy trustee may seek to avoid a payment to a creditor as preferential under federal law, 11 U.S.C. § 547(b), or under the provisions of state law using the avoidance powers authorized by 11 U.S.C. § 544(b). Section 544(b) permits the trustee

> to avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law.

11 U.S.C. § 544(b) (1979 & Supp.). "An appropriate federal or state law," beyond the avoidance powers contained in the Bankruptcy Code's preference statute, 11 U.S.C. § 547, "may invalidate 'preferences,' and the trustee, using the powers given him under section 544(b), may thus attempt to set aside a transfer as preferential and invalid under such a law. In that case, the elements of a preference as outlined by the federal or state (usually State) statute will be controlling rather than the provisions of section 547." *In re Associated Grocers of Nebraska Coop., Inc.,* 62 B.R. 439, 445 (D.Neb.1986). Indeed, the courts have found that there is no inconsistency between the Bankruptcy Code's preference provision and the recovery of preferential transfers under the laws of the various states pursuant to section 544(b). "[N]othing in the legislative history suggests that Congress intended section 547 to be the exclusive vehicle available to the trustee to avoid [preferential] transfers." *In re Kenval Marketing Corp.,* 69 B.R. 922, 931 (Bankr.E.D.Pa.1987). Instead, the legislative history reveals "that changes in the preference provision were simply designed to facilitate recovery by the trustee." *Id.* (citing H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 177–78 (1977) U.S.Code Cong. & Admin.News 1978, p. 5787); *see, e.g., In re Provident Hospital & Training Ass'n,* 79 B.R. 374 (Bankr.N.D.Ill.1987) (recognizing availability of state preference law as means of attacking a transfer under sec-

tion 544(b)). Thus, state preference law is an adjunct to, and supplemental of, those powers specifically provided for in the Bankruptcy Code which enable the trustee to avoid certain transfers.

The dissent's reference to *Barnhill v. Johnson,* ––– U.S. –––, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992), is not determinative of the outcome here. In *Barnhill,* the trustee invoked the avoidance powers of section 547(b) and therefore the Supreme Court correctly determined that federal law should control the meaning of "preference" under the Bankruptcy Code's preference provision. However, in the present case, the bankruptcy trustee sought to avoid the transfer under state law, as permitted by section 544(b), and therefore the meaning of "preference" must be defined under state substantive law. *Barnhill* does not point to a conflict between sections 544(b) and 547, nor does it suggest that resort to state law under section 544(b) would raise the problem of preemption. In the absence of any clear precedent to the contrary, we conclude that Congress intended to arm the bankruptcy trustee with the avoidance powers of state, as well as federal, preference law.

### B.

The Kentucky law governing preference payments is codified at K.R.S. § 378.060 which reads:

> Any sale, mortgage or assignment made by a debtor and any judgment suffered by a defendant, or any act or device done or resorted to by a debtor, in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion, in whole or in part, of others, shall operate as an assignment and transfer of all the property of the debtor, and shall inure to the benefit of all his creditors, ... in proportion to the amount of their respective demands including those which are future and contingent.

KY.REV.STAT.ANN. § 378.060 (Baldwin 1981).

Petro primarily relies on the early Kentucky caselaw interpreting this provision. For instance, in *Grimes v. Grimes,* 86 Ky.

511, 6 S.W. 333 (1888) the court held that the statute was designed to "prevent insolvent debtors from making preferences in any mode among their creditors." *Id.* 6 S.W. at 334. In enacting this statute, the legislature sought to ensure that all creditors were treated equally. If the debtor makes the transfer in "contemplation of insolvency, and with the design to prefer the creditor, then the transaction is within the statute." *Id.* To this end, the court found that two things must be demonstrated: (1) the transfer was made "in contemplation of insolvency;" and (2) the transfer was made "with the design to prefer one or more creditors, to the exclusion of ... others." *Id.*

The *Grimes* court pointed out that "the *intent* of the debtor furnishes the ground for equitable interference. It is the essence of the statute." *Id.* (emphasis original). The design to prefer will be presumed where the debtor makes a payment while insolvent. *Id.* However, the surrounding facts may show that "there was no motive or thought of giving an advantage or preference, and then the presumption" is rebutted. *Id.*

Likewise, in *Levis v. Zinn*, 93 Ky. 628, 20 S.W. 1099 (1893) the Kentucky court held that section 378.060's prohibitions applied to two types of situations: (1) transfers made while the debtor was actually insolvent and he knew about the fact of his insolvency; or (2) transfers made where the debtor "contemplated becoming insolvent in the future, and designed by the [transfer] to give preference to the [creditor]." *Id.* 20 S.W. at 1099. The court noted, however, that the debtor need not have actual knowledge of his insolvency, for there are cases where "the debtor's insolvency was so satisfactorily shown, and his means of knowing it so ample" that it can "admit of no other reasonable conclusion" than that the debtor designed to prefer one creditor over another. *Id.* 20 S.W. at 1100. Thus, the presumption of intent to deceive will operate irrespective of the debtor's actual knowledge of insolvency if a reasonable debtor would believe himself to be insolvent.

■ Subsequently, in *Bomanzi of Lexington, Inc. v. Tafel,* 415 S.W.2d 627 (Ky. 1967) the court held that "a transfer made by an insolvent will be presumed to be made with such intent if in fact it does constitute a preference and a man of ordinary prudence under like circumstances would know that the transaction would so operate." *Id.* at 630 (quoting *Greathouse v. Millard,* 320 S.W.2d 630, 632 (Ky.1958)). The court emphasized that actual intent is not required, stating:

> [I]t is a well-settled rule that when a man is insolvent and executes a mortgage when he knows, or by ordinary care should know, his condition, he will be held to intend the necessary consequences of his act.... If the statute were held to apply only where an actual intent to prefer one creditor to another appeared, its real purpose would be defeated.

*Id.* at 630. Therefore, the above progression of caselaw demonstrates that actual intent to prefer is sufficient, but is not necessary to establish a violation of K.R.S. § 378.060. Rather, the requisite intent may be presumed where the transfer is made while the debtor is insolvent.

Petro nevertheless argues that the Agreed Judgment did not violate K.R.S. § 378.060 because Rexplore Drilling had no actual knowledge of its insolvency, and thus the intent to prefer could not be presumed. Instead, it argues that Rexplore Drilling was optimistic that it could work out its financial problems, and that its Agreed Judgment with Petro was just an attempt to keep its business afloat.

■ However, we believe that K.R.S. § 378.060 as interpreted by *Zinn* and *Bomanzi* refute the argument advanced by Petro. The above cases do not require a debtor to have actual knowledge of its insolvent status at the time it makes a transfer to a creditor in order to invoke the presumption of intent under section 378.060. Instead, the operative inquiry is whether a reasonable debtor should have known that it was insolvent at the time of its transfer.

In the present case, the bankruptcy court and the district court concluded that Rexplore Drilling was clearly insolvent under both the balance sheet test and the "inability to pay debts when they became due" inquiry, at the time of the Agreed Judgment. Joint Appendix at 12. Rexplore Drilling's schedules listed total liabilities of $3,001,246.30 and total assets of $682,652.60. In addition, the bankruptcy court found that, in preparing the schedules, the debtor had failed to take into account a $1.8 million mortgage debt to IINA. Moreover, the testimony of Rexplore's attorney revealed that during the autumn of 1985 it was not able to pay its debts in the regular course of business, and that federal withholding taxes had not been paid since mid–1985. *Id.* at 60, 66–67. Under these circumstances, we believe a reasonable debtor, whose debts exceeded its assets by nearly $4.5 million and who was not able to pay its debts as they became due, should have been aware of its insolvency at the time of the transfer and thus an intent to prefer can be presumed.

Petro attempts to downplay Rexplore's knowledge of its insolvency by painting a brighter picture of its financial health. It argues that the bankruptcy court's assessment failed to take into account all of Rexplore's oil and gas interests, which it estimated to be worth over $3 million. The bankruptcy court, however, assigned a value of only $1,022,277 to Rexplore's oil and gas leases after considering the expert testimony presented by both parties. We do not have the authority to reevaluate the bankruptcy court's factual findings, especially where the credibility of witnesses is involved, unless they are clearly erroneous. *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988). "This circuit has clearly enunciated that findings of fact of a bankruptcy court should not be disturbed ... unless there is 'most cogent evidence of mistake or miscarriage of justice.'" *In re Edward M. Johnson and Assoc.*, 845 F.2d 1395, 1401 (6th Cir.1988). Since the question of the debtor's insolvency was primarily a factual one, we agree, under the present circumstances, to accept the bankruptcy court's determination of in-

solvency, and thus find that Rexplore made this transfer while insolvent.

Even assuming that these gas and oil leases were worth $1 million, Rexplore's debts were still nearly $3.5 million more than its assets. Therefore, a reasonable debtor should have known that it was insolvent. Simply because Rexplore was "optimistic" and believed it could work itself out of financial difficulty is not reason enough to sustain a transfer to Petro which would operate to disadvantage other creditors. Though the presumption that the transfer was made with intent to prefer may be rebutted, *Grimes*, 6 S.W. at 334, the lower court found Rexplore's explanation for the transfer to be less than credible. Joint Appendix at 13. Therefore, the presumption is sufficient to establish a violation of the statute in this case. Any other result would allow debtors to hide behind unrealistic claims of optimism, in spite of overwhelming evidence of insolvency, and defeat the legislative aims of K.R.S. § 378.-060.

### III.

Petro next argues that even if intent is not required, K.R.S. § 378.060 does not authorize the trustee to avoid the Agreed Judgment because "it did not receive a preference and was actually harmed by the agreement." Appellant's Brief at 27. Petro asserts that it suffered harm by giving up its liens on the Grayson, McLean, Ohio and Todd county leases in exchange for the Agreed Judgment. However, as determined by the bankruptcy court, Petro's lien on the Grayson leases was subordinate to a prior mortgage of $1.8 million to IINA which exceeded the value of the leases. Thus, the Grayson County lien was of no value in the hands of Rexplore. Furthermore, the bankruptcy court determined that the liens on the McLean, Ohio and Todd county leases were unenforceable under K.R.S. § 376.090 because enforcement was not sought within one year. Likewise, since the liens concerned an interest in real property, K.R.S. § 452.900 requires that enforcement actions be brought in the county in which the interest existed. Petro

never followed this procedure. As the trustee pointed out, Petro did not give up the right to foreclose as a result of the Agreed Judgment, but rather as a function of its own failure to properly enforce the liens. As such, the bankruptcy court found that "no valuable rights appear to have been yielded by Petro." Joint Appendix at 15. We concur with the lower court's analysis that Petro was not harmed. It had nothing to lose by entering into the Agreed Judgment, and therefore its position could not have suffered.

In the alternative, Petro argues that even if it was not harmed, it gained nothing by the Agreed Judgment. Because Rexplore did not transfer a valuable property interest there was no "transfer" under K.R.S. § 378.060, and hence no preference. However, we recognize that Petro was given the right to enforce its Agreed Judgment, which it did in this case by obtaining a garnishment order. This garnishment order allowed Petro to collect over $21,000 from Ashland Oil, which held funds which were owing to Rexplore. Although the benefit received by Petro was not tangible or direct, it provided Petro with the means of recovering tangible property. In fact, K.R.S. § 378.060 states that "any sale, mortgage or assignment made by a debtor and *any judgment* suffered by a defendant" is included within the definition of a preferential transfer. Since Petro secured an Agreed Judgment against Rexplore Drilling, this would appear to be encompassed by the express terms of the statute, which bars "any judgment suffered by a defendant," irrespective of whether it had a beneficial effect.

Therefore, because it made no errors of law, and because its factual determinations must be accorded substantial deference, we conclude that both the bankruptcy court and the district court correctly applied K.R.S. § 378.060 to the Agreed Judgment in this case.

## IV.

■ Petro next argues that its garnishment lien against Rexplore's funds held by Ashland Oil may not be avoided as a pref- erential transfer. Although somewhat unclear, Petro appears to be arguing that, while the Agreed Judgment may constitute a preference, a garnishment issued pursuant to that Agreed Judgment is not preferential. This is because, Petro contends, the debtor could not have designed or intended that the garnishment would occur. Rather, it was merely a fortuitous consequence. Appellant's Reply Brief at 16. Likewise, the dissent appears troubled by the fact that the debtor could not have "designed" to prefer one creditor over another, thus placing the garnishment beyond the preference statute.

Because the preceding discussion makes clear that a debtor need not have a subjective intent to plan, contrive, scheme, arrange or intend, the above concerns will not influence our analysis of whether the garnishment constitutes a preference. We agree with the trustee in bankruptcy that the Agreed Judgment and the garnishment cannot be separated for purposes of our analysis under K.R.S. § 378.060. But for the Agreed Judgment, Petro had no right to garnish funds held on behalf of Rexplore Drilling; the garnishment was simply the means of enforcing the Agreed Judgment. Therefore, we are unable to draw any meaningful distinction between the Agreed Judgment and the garnishment which would allow us to treat them differently under K.R.S. § 378.060. Were we not to interpret the statute this way, an insolvent debtor could effect a preference by entering into an agreed judgment and, by failing to pay according to the terms thereof, permit a creditor to collect by means of garnishment. We do not believe that K.R.S. § 378.060 intended such an incongruous result. Therefore, the trustee properly avoided Petro's garnishment lien against funds held for the debtor by the garnishee, Ashland Oil.

## V.

For the foregoing reasons, the decision of the district court is hereby AFFIRMED.

MERRITT, Chief Judge, dissenting.

The time limits and the substance of the Kentucky preference statute are flatly in-

consistent with the preference provisions of the Bankruptcy Act, 11 U.S.C. § 547, and there is a serious question in my mind whether the doctrine of preemption of inconsistent state law allows the use of the state statute by the trustee in bankruptcy or its enforcement by the Bankruptcy Court. As the Supreme Court recently reminded us, bankruptcy law leaves to state law the definition of property rights but not the definition of what is a "preference" or a "transfer." *Barnhill v. Johnson, Trustee,* — U.S. ——, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992). These are matters of federal law. Preferences are integrally a part of a collective proceeding (bankruptcy, composition, receivership, and such proceedings that marshall the assets of a debtor), and once a federal collective proceeding has begun, federal rules and federal policy should prevail. This conflicts question goes to the heart of this case, and I would order the parties to brief the issue on appeal, although it was not raised below, or I would have the issue remanded to the Bankruptcy Court for consideration there.

In addition to the possible preemption problem, it is not clear that the Kentucky preference statute applies in this case. Although KRS 378.060 is referred to as a preference statute, it is in fact designed to begin a state collective proceeding: Under the statute a preference "operate[s] as an assignment and transfer of all the property of the debtor." KRS 378.060. The statute appears to provide for an alternative collective proceeding under state law existing alongside the federal bankruptcy proceeding. The statute does not appear to provide simply for avoidance or recovery of a particular transfer.

On the state law issue I do not agree that the garnishment in question here was on a "judgment suffered ... with the design to prefer one or more creditors to the exclusion ... of others." The bankrupt company was forced into the agreed judgment by a lawsuit which at the time would most likely have otherwise ended in disaster. The creditor is simply being punished for settling its case rather than insisting on a contested judgment which would under no circumstances have qualified as a "pref-

erential" transfer under the Kentucky statute. I cannot find any evidence of a "design to prefer" one creditor over another, and I would not presume that such a "design exists in the absence of any evidence." Accordingly, I respectfully dissent from the views of the panel.